OPINION
Rodney Star Giddings appeals from a judgment of the Montgomery County Court of Common Pleas, which found that he had violated the conditions of his community control and ordered him to be imprisoned for two years.
In 1998, Giddings was convicted of burglary and was sentenced to a five-year term of community control and to three days at the Dayton Rehabilitation Center. In October 1999, the state filed a notice of community control violation proceedings against Giddings. Following a hearing on March 2, 2000, the trial court continued Giddings on community control but imposed the additional requirement that he complete "up to (six) 6 months at the Dayton Human Rehabilitation Center (DHRC) *** and successfully complete [the] Broken Dreams Program" for substance abuse.
On May 15, 2000, the state filed another notice of community control violation proceedings against Giddings. The notice alleged that Giddings had violated Rule #6, which involved refraining from substance abuse and the necessity to submit to medical tests to monitor the use of controlled substances. The notice further stated: "[Y]ou submitted a urinalysis sample on May 4, 2000, which tested positive for marijuana. This evidence of continued use led to your dismissal from the Broken Dreams Programs, a special sanction added to your community control." A hearing was conducted on June 7 and 20, 2000. After the hearing, the trial court ordered that Giddings be imprisoned for two years, implicitly finding that Giddings had violated the terms of his community control.
Giddings raises one assignment of error on appeal.
 THE TRIAL COURT ERRED IN ITS DETERMINATION THAT DEFENDANT-APPELLANT HAD VIOLATED THE TERMS AND CONDITIONS OF HIS PROBATION, AND IN ITS SENTENCING OF DEFENDANT-APPELLANT TO THE CORRECTIONS RECEPTION CENTER FOR A TERM OF TWO YEARS, AS SUCH DETERMINATION AND SENTENCING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Giddings argues that, at the hearing on the community control violation, the state did not present "competent and substantial evidence" of substance abuse or of a "dirty" urinalysis and that the state "failed to present any witness who testified that [he] violated any of the rules of the Broken Dreams Program."
Although there were some discrepancies between the nature of the violation, as alleged on the notice of community control violation proceedings, and the evidence presented at hearing, Giddings' brief understates the evidence offered against him. Robert Welch, a counselor with the Broken Dreams Program at the Dayton Rehabilitation Center, testified that, on May 4, 2000, Giddings' name had been provided to him by Giddings' primary counselor as someone whose urine should be tested that day. When Welch pulled Giddings out of a group session to obtain a urine sample, Giddings became "very fidgety" and Welch asked him what was wrong. According to Welch, Giddings replied that he could not urinate, that he was "not going to sink [him]self," and that he was "not trying to go to prison." Welch further testified that Giddings had admitted that he would get into trouble if he "submitted dirty urine" and that he had been smoking marijuana a couple of days prior to May 4. Giddings did eventually provide a urine sample.
Giddings' primary substance abuse counselor, Thalia Duncan Alexander, also testified on behalf of the state. Duncan Alexander testified that on May 4, 2000, about two weeks after Giddings had entered the Broken Dreams Program, she had randomly selected him to have a urine test and, when he initially refused to take the test, she had explained to him that he could be terminated from the program for refusing a urinalysis. After Welch took the urine sample from Giddings, he and Giddings returned to Duncan Alexander's office, and Welch informed Duncan Alexander that Giddings had something to tell her. According to Duncan Alexander, Giddings then admitted to her that he had smoked marijuana since entering the Broken Dreams Program due to stress, problems with his wife, and teasing in jail. Duncan Alexander then informed Giddings' probation officer of this fact.
Both counselors testified that termination from the Broken Dreams Program was automatic upon evidence of drug usage. Accordingly, Giddings was terminated from the Broken Dreams Program as of May 4, 2000 due to his admission of drug use. Both counselors and the probation officer acknowledged, however, that the urinalysis taken from Giddings on May 4, 2000, had tested negative for marijuana.
Giddings presented a different version of events. He testified that he had not used marijuana for many months prior to the request for a urine sample on May 4, 2000, and that he had not admitted to using marijuana at that time. He stated that he was very serious about his rehabilitation and that, while other people in the Broken Dreams Program had used marijuana, he had not. He admitted that he had asked the counselors some questions about how long marijuana could stay in one's system and opined that the counselors must have misinterpreted his questions if they thought that he had admitted using marijuana. Giddings also pointed out that his urinalysis was negative.
When considering the weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380,387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. In this case, the trial court apparently found the counselors' testimonies to be more credible than Giddings' testimony. The counselors' versions of events, if believed, provided ample evidence from which the trial court could have concluded that Giddings had violated the terms of his community control, notwithstanding the negative urinalysis.
Giddings also alludes to a due process argument on the grounds that the notice of the hearing, which indicated that he had tested positive for marijuana in a urinalysis, did not comport with the evidence actually offered against him, which was that he had admitted to using marijuana. We do not believe that Giddings was prejudiced by this discrepancy, however. It was clear from the notice of community control violation hearing that Giddings was accused of using a controlled substance which led to his dismissal from the Broken Dreams Program, and he had ample opportunity at the hearing to present his version of events and to challenge the state's version of events, including its earlier assertion that he had had a positive urinalysis.
The assignment of error is overruled.
BROGAN, J. and YOUNG, J., concur.