OPINION
{¶ 1} On November 30, 2002, appellant, Darron Reynolds ("appellant"), was charged with the offenses of domestic violence, a violation of R.C. 2919.25(A), and assault, a violation of R.C. 2903.13(A), misdemeanors of the first degree. Pursuant to appellant's written waiver of jury trial, this matter was tried to the Franklin County Municipal Court on June 4, 2003. At the conclusion of testimony and closing arguments, the court stated appellant had not met his burden to establish the defense of self-defense, and found appellant guilty of both charges. The trial court journalized its verdict by judgment entry filed on June 4, 2003 A review of the record shows the trial court intended the two offenses to merge for purposes of sentencing, as it imposed no sentence on the assault charge and ruled that it was an allied offense of similar import with the charge of domestic violence. On the domestic violence charge, the trial court sentenced appellant to six months of incarceration, with all but two days suspended, plus two years of probation and a $200 fine. Appellant now appeals from the conviction on the offense of domestic violence.[1] For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} The following facts were adduced at trial. Sonora Reynolds ("Ms. Reynolds") and appellant are the parents of two children, Saliyma Reynolds ("Saliyma") and Fuwhad Reynolds ("Fuwhad"). Appellant and Ms. Reynolds have been separated since 1995. Appellant and Ms. Reynolds have a strained relationship and are unable to communicate civilly with each other, they communicate instead through third parties, such as their children or with appellant's mother. Saliyma and Fuwhad reside with Ms. Reynolds and spend weekends with appellant only when his work schedule permits and when arrangements are made on the preceding Thursday.
 {¶ 3} On Friday, November 29, 2002, Saliyma had a slumber party at Ms. Reynolds home to celebrate Saliyma's 11th birthday. On Saturday, November 30, 2002, Ms. Reynolds was driving Saliyma's guests home. As one of the guests lived near appellant, Saliyma and Fuwhad asked to visit him, even though prior arrangements had not been made. Ms. Reynolds stayed in the car and sent the children to ask appellant if they could stay with him for the weekend. Appellant was unable to accommodate the children, as no one could stay with them while he was at work. Saliyma and Fuwhad returned to the car and Saliyma conveyed that message to Ms. Reynolds.
 {¶ 4} From this point, the parties present widely divergent versions of the events. Ms. Reynolds testified she noticed the children were crying as they returned to her car. She states she simply left her car to speak with appellant and attempt to change his mind because the children wanted to see him. She related that appellant repeatedly struck her with a large wooden piece of door trim, using sufficient force to break the wood. Ms. Reynolds states that after she had been knocked down and was bleeding, she pulled a box cutter from her pocket, and claims she did so only to defend herself. Ms. Reynolds alleges that after appellant broke a second piece of wood while hitting her, appellant went to his apartment and returned with a broomstick.
 {¶ 5} Saliyma testified on behalf of the state as follows. She testified that she and Fuwhad asked appellant if they could stay the weekend with him, and appellant explained they could not, as he had to go to work and they had not called ahead to indicate they were coming to stay. Saliyma further testified she had been looking forward to using a karaoke machine appellant bought her for her birthday, and Ms. Reynolds suggested she bring the machine to her home if Saliyma could not stay with her father. Saliyma explained that appellant wanted the things he bought for Saliyma and Fuwhad to stay at his home and she would not be allowed to take the machine with her. Saliyma states she was not crying as she returned to the car.
 {¶ 6} Saliyma's description of the physical confrontation between appellant and Ms. Reynolds corroborates much of Ms. Reynolds' testimony. Saliyma testified that after she and Fuwhad returned to the car, Ms. Reynolds got out and stood by appellant's truck to try to speak with him. Appellant came out of his home, picked up a wooden stick, and told Ms. Reynolds to get back in her car. When Ms. Reynolds did not immediately do so, appellant hit her in the legs with the stick. Ms. Reynolds continued to argue with appellant. Both appellant and Saliyma told Ms. Reynolds to get back in the car. When Ms. Reynolds did not do so, appellant struck her "one more time real hard with the stick." The force of appellant's blows caused the stick to break more than once. After appellant hit Ms. Reynolds in the head with the stick, she pulled a box cutter out of her pocket and moved towards appellant. Saliyma further testified:
THE WITNESS: * * * Like, I don't know what happened to the box cutter, but it must have dropped or something because they — my dad dropped the stick and he hit my mom in her face.
THE COURT: Wait. He hit what?
THE WITNESS: He hit my mamma in her face.
THE COURT: With what?
THE WITNESS: His fists.
(Tr. 70.)
 {¶ 7} Appellant testified that Saliyma and Fuwhad were not crying as they returned to the car. Appellant contends Ms. Reynolds was yelling at him from the middle of the street, where her car was parked. Appellant claims that after he explained why the children could not stay, he returned to his apartment, but looked back towards Ms. Reynolds and saw her act as if she was going to damage appellant's truck. Appellant was particularly concerned about his truck, as he used it as part of his job. Appellant stated he left his apartment and asked his children to come get their mother, at which point Ms. Reynolds pulled out a box cutter and came at him. Appellant states he then struck her with his fists twice in self-defense, hitting her in the face. Appellant alleges that Ms. Reynolds rose and started swinging the box cutter again, and states at that point he went back into his apartment. Appellant denies hitting Ms. Reynolds with a stick of any kind, but acknowledges he returned from his apartment with a broomstick.
 {¶ 8} Appellant sets forth three assignments of error:
1. The trial court improperly considered certain evidence at the time of trial[.]
2. The trial court erred when it determined that the evidence was sufficient beyond a reasonable doubt for a finding of guilt and in issuing an order of conviction against the defendant.
3. The trial court erred when it failed to grant an order of acquittal after presentation of evidence.
 {¶ 9} Appellant's first assignment of error argues the trial court improperly considered certain evidence at trial.[2]
In the first sentence of his brief, appellant claims the trial court "granted improper credibility and weight to the testimony of the principal prosecution witness" and claims his conviction was against the manifest weight of the evidence. We therefore construe appellant's claim the court "improperly considered
certain evidence" to also mean the court "improperly weighed
certain evidence."
 {¶ 10} Appellant contends the trial court erred when it did not sustain his proper objection to portions of Ms. Reynolds' testimony that appellant claims was rambling, unresponsive, and inadmissible under Evid.R. 405(B). The admission of evidence lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v.Russell, Franklin App. No. 03AP-666, 2004-Ohio-2501, citingRenfro v. Black (1990), 52 Ohio St.3d 27, 556 N.E.2d 150. The term "abuse of discretion" connotes more than a mere error of judgment; it implies a decision that is without any rational basis in law, and clearly wrong. Angelkovski v. Buckeye PotatoChips Co. (1983), 11 Ohio App.3d 159, 463 N.E.2d 1280. In a bench trial, trial judges are presumed to rely only upon relevant, material, and competent evidence in arriving at their judgments. State v. McMannis (Dec. 4, 2001), Franklin App. No. 01AP-413, citing State v. Richey (1992), 64 Ohio St.3d 353,362, 595 N.E.2d 915; State v. Post (1987), 32 Ohio St.3d 380,384, 513 N.E.2d 754. In order to defeat this presumption, it must affirmatively appear on the record that the trial court did rely on irrelevant evidence. State v. White (1968),15 Ohio St.2d 146, 151, 239 N.E.2d 65.
 {¶ 11} The portion of Ms. Reynolds' testimony that appellant claims was improperly admitted concerned a police report made by appellant on December 15, 2002, accusing Ms. Reynolds of telephone harassment. The trial court did not admit the December 15, 2002 police report of telephone harassment into evidence, as it had no probative value of the November 30, 2002 assault. Appellant did not object to the evidentiary ruling excluding the police report. Further, there is no evidence in the record that the trial court relied on any police report. Appellant's claim of error with respect to the admissibility of Ms. Reynolds' testimony is not well-taken.
 {¶ 12} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief.'" State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541
(emphasis sic) (citations omitted). When reviewing the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences based thereon, consider the credibility of witnesses, and determine whether the finder of fact clearly lost its way and created such a manifest injustice that the conviction must be reversed. Id., citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 13} We review the record from the viewpoint of a "thirteenth juror." However, our ability to weigh the evidence and consider the credibility of witnesses is limited, since we must be mindful that the trier of fact was in the best position to evaluate the demeanor and credibility of witnesses and determine the weight to be accorded to the evidence. State v.DeHaas (1967), 10 Ohio St.2d 230, 227, N.E.2d 212, paragraph one of the syllabus; State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037. Accordingly, an appellate court will not reverse a conviction as being against the manifest weight of the evidence if the record contains substantial, credible evidence upon which the trier of fact has based its verdict.State v. Nicely (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236, paragraph two of the syllabus.
 {¶ 14} R.C. 2919.25(A) sets forth the elements of the offense of domestic violence as (a) knowingly (b) causing or attempting to cause (c) physical harm (d) to a family or household member. A person acts "knowingly," regardless of purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). "Physical harm" to a person means any injury, regardless of its gravity or duration. R.C. 2901.01(A)(3). A spouse or former spouse is a "family member" for purposes of the domestic violence statute, even if he or she is no longer living in the same household. R.C.2919.25(F). Ms. Reynolds is a "family member" for purposes of the domestic violence statute.
 {¶ 15} Appellant claims he struck Ms. Reynolds in self-defense. Self-defense is an affirmative defense, for which appellant bears the burden of proof by a preponderance of the evidence. R.C. 2901.05(A). To establish self-defense, appellant must show: (1) he was not at fault in creating the situation giving rise to the assault; (2) he had a bona fide belief that he was in imminent danger of great bodily harm and that his only means of escape from such danger was by the use of force; and (3) he must not have violated any duty to retreat or avoid the danger. See State v. Robbins (1979), 58 Ohio St.2d 74,388 N.E.2d 755; State v. Melchior (1978), 56 Ohio St.2d 15,381 N.E.2d 195. Whether appellant's use of force was reasonable is a question for the trier of fact; the true question of fact to be ascertained is the bona fide belief of a defendant as to his or her immediate peril. State v. Jackson (Dec. 14, 2000), Franklin App. No. 00AP-444. These three elements are cumulative; if appellant fails to prove any one of the elements by a preponderance of the evidence, then self-defense has not been demonstrated. State v. Jackson (1986), 22 Ohio St.3d 281,490 N.E.2d 893.
 {¶ 16} Appellant's testimony that he only punched Ms. Reynolds in the face after she swung at him with a box cutter could establish his claim of self-defense, if believed by the trier of fact. However, the record also contains testimony that would permit the trier of fact to disbelieve appellant, specifically that part of his testimony wherein he stated he did not strike Ms. Reynolds prior to becoming aware of the presence of the box cutter. Ms. Reynolds testified that appellant hit her repeatedly without provocation, using a long wooden piece of door trim. Saliyma testified that appellant struck Ms. Reynolds with a long stick and punched her in the face, and specifically stated Ms. Reynolds did not pull the box cutter from her pocket until after appellant struck Ms. Reynolds in the head.
 {¶ 17} The trier of fact was in the best position to evaluate the demeanor and credibility of the witnesses and determine the weight to be accorded to the evidence. Based on the state of the evidence, the trial court could rationally find that any one of the elements of self-defense had not been established by a preponderance of the evidence. The record contains substantial, credible evidence upon which the trier of fact could determine appellant knowingly caused physical harm to a family member, in violation of R.C. 2919.25(A). As there is testimony in the record that, if believed, would permit a trier of fact to disbelieve appellant's version of events, we cannot say the trier of fact lost its way in rejecting appellant's claim of self-defense.State v. Palmer (Mar. 28, 2000), Franklin App. No. 99AP-175. Appellant's first assignment of error is therefore overruled.[3]
 {¶ 18} Appellant's second assignment of error challenges the sufficiency of the evidence. Appellant's third assignment of error claims the trial court erred when it failed to grant an order of acquittal after presentation of the evidence. Because we apply the same standard of review to a motion for an order of acquittal pursuant to Crim.R. 29(A) as we apply to a challenge of the sufficiency of the evidence, we address these assignments of error together. City of Columbus v. Joyce (Nov. 29, 2001), Franklin App. No. 00AP-1486; cf., State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541.
 {¶ 19} When an appellate court reviews whether the evidence presented at trial was, as a matter of law, sufficient to support a guilty verdict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781;State v. Williams, 99 Ohio St.3d 493, 501, 2003-Ohio-4396. A sufficiency of the evidence analysis does not permit an appellate court to weigh the evidence, since its weight and credibility are questions for the finder of fact. State v. Martin (1983),20 Ohio App.3d 172, 175; State v. Hill (1996), 75 Ohio St.3d 195,205, 661 N.E.2d 1068. Thus, our analysis on the sufficiency of the evidence is limited to whether the evidence presented, if believed by any rational finder of fact, would permit a finder of fact to find all the essential elements of the offense beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 20} In order to find appellant guilty of domestic violence in violation of R.C. 2919.25(A), the record must contain sufficient evidence to permit a trier of fact to find that appellant knowingly caused or attempted to cause physical harm to a family or household member. In viewing the evidence presented in the light most favorable to the state, we find that the evidence is sufficient for any rational trier of fact to find the essential elements beyond a reasonable doubt of the crime of domestic violence. Appellant's second and third assignments of error are therefore overruled.
 {¶ 21} Having overruled each of appellant's three assignments of error, we affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
Bowman and Brown, JJ., concur.
[1] In this context, a "conviction" means a judgment of conviction, which consists of a verdict or finding of guilty and the sentence imposed. Crim.R. 32(C); State v. McGuire (1997),80 Ohio St.3d 390,399, 686 N.E.2d 1112; State v. Johnson,
Franklin App. No. 00AP-1115, 2003-Ohio-578. As appellant was convicted only of domestic violence, in violation of R.C.2919.25(A), we confine our analysis accordingly and need not address the assault charge.
[2] Appellant's brief does not address the admissibility of certain testimony until its discussion of his third assignment of error. We address the admissibility issue here, consistent with the manner in which error was assigned.
[3] Additionally, after the court stated it was entering a finding of guilty, appellant was granted an opportunity to speak to the court and questioned the court's basis for disbelieving his claim of self-defense. The court stated appellant could have simply avoided any confrontation by retreating into his apartment, and appellant acknowledged he could have done so. Where the duty to retreat is violated, a trier of fact may properly reject a claim of self-defense. State v.Mitchell-Dulaney (Dec. 21, 2000), Franklin App. No. 00AP-542.