DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Wood County Court of Common Pleas, wherein appellant, Matthew P. Stowell, was found guilty of sexual battery, a violation of R.C.2907.03(A)(3), a felony of the third degree, and was sentenced to one year in prison. Stowell was also determined to be a sexually oriented offender.
 {¶ 2} The following facts, as adduced at appellant's trial, are relevant to our disposition of this cause.
 {¶ 3} Stowell and Abigail Black ("Abby") met in high school when she was a freshman and he was a junior. Stowell was also a friend of the victim, Abby's twin sister, Margaret Black ("Margie"). Although photographs reveal that Abby and Margie have similar facial features, Abby is four inches taller than Margie and wears larger size clothing. Margie wears her hair long while Abby's is shoulder length and is lighter than Margie's hair. In addition, the sisters have different tastes in clothing and jewelry.
 {¶ 4} Stowell and Abby started dating in her freshman year in high school and were a couple through her freshman year in college at which point their romantic relationship ended. In the spring of 2002, they did, however, renew an "on again, off again" "friendship" that included sexual intercourse. At the time, both appellant and Abby attended Bowling Green State University ("BGSU"). Margie initially enrolled in Kent State University and transferred to BGSU in the fall of 2002. Abby, Margie, and two other young women rented an apartment at Columbia Courts, the same complex as Stowell. According to the witnesses who testified at appellant's trial, the tenants were mainly college students who considered each other as friends and never locked their apartment doors. The testimony of the witnesses also indicated that "partying" was a common occurrence at Columbia Courts.
 {¶ 5} After the twins moved into the complex, Stowell was a regular visitor to their apartment. Appellant would rap on the door with a unique knock and then enter without waiting for consent from any of the occupants. Appellant, Abby, and Margie frequently "hung out" together. There were occasions when just Margie and appellant spent time together. Appellant, who was 21 years old, would purchase the beer for the twins.
 {¶ 6} On the evening of November 16, 2002, Margie and her roommate, Dana Thomas, and some of their friends went to a party. Abby decided to stay home because she was tired. It is undisputed that Stowell was at the apartment talking with Abby that evening, that Stowell then left and went out to the bars with his friends, and that Abby fell asleep on the "long" couch located to the right of the front door in the living room. Abby was wearing sweat pants with a drawstring around the waist. At appellant's trial, Abby testified that she never slept on a pink love seat that belonged to Margie and was described as being "right in front of you" as you entered the apartment.
 {¶ 7} Margie and Dana returned to their apartment at approximately 2:30 a.m. At that point, Abby woke up and went to her bedroom. Dana decided to go out again, but Margie, who had consumed "10 to 12 beers" fell asleep, fully dressed, on the pink love seat. Dana returned to the apartment a "few hours" later and went to the bedroom she shared with Abby.
 {¶ 8} At some time between 3:00 a.m. and 4:00 a.m., Margie woke up. She was laying on her stomach with her face toward the cushions on the back of the love seat. Her pants, which buttoned up the front, were unbuttoned. Margie testified that Stowell had his hand down the front of her pants with his fingers penetrating her vagina. Margie maintained that when she turned to face appellant, he looked at her with a "blank stare." Margie got up and walked out of the living room. She awakened Dana, who stated that Margie was crying and hysterical. The two then roused Abby. According to Abby, she immediately confronted appellant at his apartment.[1] Abby insisted appellant initially denied Margie's allegation, but later that morning he admitted that put his hand down the front of Margie's pants.
 {¶ 9} According to Margie, the incident on November 17, 2002 was not the first time that Stowell engaged in nonconsensual sexual activity with her. She told her sister and the Bowling Green Police Officers who subsequently investigated the charges levied by Margie against appellant that he had sexual contact with her in January 2001. During this period Abby and Stowell were still together and living in the same apartment in Bowling Green, Ohio. Over the Christmas break, Margie stayed with Abby and appellant, sleeping on their couch at night.
 {¶ 10} Margie maintained that one night she woke up "without any pants or underwear on." She alleged that appellant was standing behind her with his penis touching her as if he were about to have sex. Margie testified that she grabbed a blanket and ran to another couch. When Abby came out of the bedroom a few seconds later, she asked Stowell what he was doing. Margie asserted that appellant said "oh, oh, oh" and returned to the bedroom. Margie claimed that she never told her sister about the incident because appellant "was drunk, and he knew it was wrong, and that it would just be — you know, he knew he just made a mistake * * *." Margie stated that when appellant attempted to engage in sexual activity with her again, she decided to tell her sister about the first incident.
 {¶ 11} On February 6, 2003, the Wood County Grand Jury indicted appellant on one count of gross sexual imposition, a violation of R.C.2907.05(A)(5). This count related to the incident that allegedly occurred in January 2001. The other two counts stemmed from the November 17, 2002 episode. One count charged appellant with burglary, a violation of R.C.2911.12(A)(2); the other count charged him with sexual battery, a violation of R.C. 2907.03(A)(3).
 {¶ 12} At appellant's jury trial, he testified on his own behalf. While categorically denying that the January 2001 incident ever happened, he admitted that he put his hand down the front of Margie's pants on November 17, 2002. Nevertheless, he maintained that his fingers were never near her vagina and that he mistakenly thought Margie was Abby. Although some of appellant's testimony contradicted other witness testimony on some of the facts brought out during trial, he agreed that Margie was sleeping on the pink love seat and that he had to unbutton her pants.
 {¶ 13} The jury returned verdicts of not guilty on the burglary and gross sexual imposition charges; nevertheless, they found appellant guilty of sexual battery. The trial court sentenced appellant to one year in prison. Appellant appeals his conviction and sentence and asserts:
 {¶ 14} "The verdict was unsupported by and is against the manifest weight of the evidence."
 {¶ 15} "The sentence imposed by the trial court was excessive and contrary to law."
 {¶ 16} Although appellant mentions the word "sufficiency" in the first sentence of his argument under his first assignment of error, a reading of the remainder of that argument makes clear the fact that he is challenging the trial court's judgment on the basis of manifest weight. Specifically, he contends that the trial court's judgment is against the manifest weight of the evidence because the jury acquitted him on the count of burglary and on the count of gross sexual imposition. He therefore argues that the jurors "clearly disbelieved" the victim's testimony and concludes that the jury should have questioned the victim's testimony on the issue of penetration, especially in light of the acquittal on the charge of burglary. He claims that the two verdicts are inconsistent.[2]
 {¶ 17} In determining whether a verdict is against the manifest weight of the evidence, this court sits as a "thirteenth juror." State v.Thompkins (1997), 78 Ohio St.3d 380, 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. In resolving conflicts in the evidence, we must determine whether the finder of fact "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175. Moreover, this court must keep in mind that it is the trier of fact's duty to determine the credibility of a witness; accordingly, our ability to consider credibility is limited. State v. Reynolds, 10th Dist. No. 3692, 2004-Ohio-3692, at ¶ 13 (Citation omitted.).
 {¶ 18} Appellant was found guilty of a violation of R.C. 2907.03, which provides:
 {¶ 19} "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
 {¶ 20} "* * *
 {¶ 21} "(3) The offender knows the other person submits because the other person is unaware that the act is being committed."
 {¶ 22} "Sexual conduct" is defined as, among other things, "the insertion, however slight, of any part of the body * * * into the vaginal or anal cavity." R.C. 2907.01(A).
 {¶ 23} In the case before us, the proof of the elements of the charged offense was presented solely through witness testimony. There was no DNA, no photographs, or any other physical evidence. Thus, the jurors must have believed the testimony of Margie and the other witnesses on the sole contested issues related to the charge of sexual battery, to wit, (1) whether appellant knew that the person on the pink love seat was Abby; and (2) whether appellant's fingers were inserted into Margie's vagina. The fact that the jurors did not find appellant guilty of burglary or gross sexual imposition does not mean that they had to find Margie's testimony not credible as to every other issue presented in this case. We therefore find, upon a thorough review of the evidence in this case, that the jury did not clearly lose its way and create such a manifest miscarriage of justice that appellant's conviction must be reversed and a new trial ordered. Appellant's first assignment of error is found not well-taken.
 {¶ 24} In his second assignment of error, appellant asserts that the trial court abused its discretion in sentencing him to one year in prison rather than imposing "some form of community control with a period of local incarceration."
 {¶ 25} We cannot reverse, modify, or vacate a sentence unless we find, by clear and convincing evidence, that the sentence is not supported by the record or is otherwise contrary to law. R.C.2953.08(G)(2). R.C. 2929.11(A) requires the sentencing judge to follow several principles. First, the court must be guided by the overriding purposes of felony sentencing, which are "to protect the public from future crime by the offender and others" and "to punish the offender." Id. In order to achieve these purposes a court is required to consider (1) the necessity for "incapacitating the offender;" (2) the deterrence factor; (3) rehabilitation of the offender; and (4) "making restitution to the victim of the offense, the public, or both." Id.
 {¶ 26} Additionally, the sentence must be "reasonably calculated" to achieve the purposes of the sentencing statute by being "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim." R.C. 2929.11(B). The sentence must also be consistent with similar crimes committed by similar offenders. Id.
 {¶ 27} Absent the requirement of a mandatory sentence for a felony, a trial court has the discretion, in addressing the seriousness and recidivism factors set forth in R.C. 2929.12(B), (C), (D), and (E), to ascertain the most effective manner in which to comply with the purposes and principles of felony sentencing. R.C. 2929.12(A). Finally, in reviewing a sentence imposed by a trial court, an appellate court examines the presentence investigative report, the trial court record, and any statements made at the sentencing hearing. R.C. 2953.08(F)(1)-(3).
 {¶ 28} As pertaining to the present case, we first note that there is no presumption for or against imprisonment for a third degree felony.State v. Donahue, 6th Dist. No. WD-03-083, 2004-Ohio-7161, at ¶ 7 See, also, State v. McIver, 4th Dist. No. 04CA594, 2005-Ohio-1296, ¶ 6. Thus, if the trial judge in the case sub judice complied with the sentencing guidelines, he did not abuse his discretion by imposing the minimum prison sentence, one year, for a third degree felony. R.C.2929.14(A)(3).
 {¶ 29} In opting to impose the one year sentence, rather than community control, the trial judge stated that he must consider the purposes and principles of sentencing as set forth in R.C. 2929.11. He then went on to consider the applicable factors set forth in R.C. 2929.12. Under the "seriousness" factors set forth in R.C. 2929.12(B) and (C), the judge found that the victim suffered serious psychological harm. R.C.2929.12(B)(2). He also determined that appellant's long term relationship with the victim and her family placed him in a position of trust that facilitated the offense. R.C. 2929.12(B)(6). With regard to recidivism, the court held that appellant acknowledged a pattern of alcohol and drug abuse, R.C. 2929.12(C)(4), and that appellant demonstrated no genuine remorse, R.C. 2929.12 (C)(5). The court also considered the mitigating factors, specifically, that appellant was never adjudicated a delinquent, R.C. 2929.12(E)(1), and appeared to have been, for a large part, a law abiding citizen, R.C. 2929.12(E)(3).
 {¶ 30} We conclude that the trial court's findings are supported by clear and convincing evidence. In particular, the record clearly demonstrates that appellant's long time relationship with Abby and Margie and their family did place him in a position of trust. In addition, appellant admitted to the use of alcohol and marijuana. The presentence investigation report in this case also discloses that Stowell tried Ectasy "ten to twenty times" in college and that he "snorted" cocaine on several occasions.
 {¶ 31} Furthermore, the record reveals that the trial court was not, as argued by appellant, retaliating against him for exercising his constitutional right to a jury trial by finding that appellant displayed no genuine remorse for his behavior. Rather, that court observed, and the record supports this observation, that appellant's recitation of the events and the rationale for both his, Abby's, and Margie's behavior changed a number of times throughout the proceedings below. For example, after his trial, he initially told the Investigating Probation Officer that Margie "set him up." He later recanted this explanation and offered "other potential explanations." Consequently, based upon all of the foregoing, we find that the trial court did not abuse its discretion in sentencing Stowell to one year in prison. Accordingly, his second assignment of error is found not well-taken.
 {¶ 32} The judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal. See App.R. 24.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Singer, P.J. Skow, J., concur.
[1] Appellant denied that Abby immediately confronted him.
[2] While we do not believe that appellant is actually arguing inconsistent verdicts rather than manifest weight, such an argument would be of no avail because "inconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict * * *." Statev. Hicks (1989), 43 Ohio St.3d 72, 78, citing United States v. Powell
(1984), 469 U.S. 57, 68. As held by the Ohio Supreme Court in State v.Adams (1978), 53 Ohio St.2d 223, paragraph two of the syllabus, "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count."