DECISION AND JUDGMENT ENTRY
[¶ 1} Appellant, Jeffrey B. Goehring, Jr., appeals from a judgment of the Ottawa County Court of Common Pleas. The following facts are relevant to our disposition of this cause.
[¶ 2} At a "little after midnight" on September 1, 2005, Officer Rodney Biggert of the Carroll Township Police Department received a call from dispatch informing him *Page 2 
of the fact that there was a vehicle in a ditch at Toussaint Portage and Genzmen Roads. When he arrived at that intersection, the officer saw the back portion of a truck, which was used in the business of appellant's father, down in the ditch. The back tires of the truck were spinning because someone was attempting to drive the truck out of the ditch.
[¶ 3} Officer Biggert saw Sarah Hetrick, appellant's girlfriend, seated "more or less" on the passenger side of the vehicle. He then saw appellant walk around from the driver's side of the truck. When Biggert asked appellant if he had been driving the truck, appellant stated that Hetrick was the driver. Because Hetrick displayed certain signs that she was intoxicated, the officer decided to arrest her for driving while under the influence of alcohol. He therefore placed her in the rear seat of his police cruiser and started informing her of her constitutional rights. Biggert told appellant to stand at the front of his cruiser. Nevertheless, Goehring walked toward the officer but was told to "step back." Initially, appellant complied with Biggert's order, but once again approached the officer and started "screaming" in his face. When Officer Biggert told him to return to the front of the cruiser, appellant started cursing him and "got right in [the officer's] face. At that point, Officer Biggert called for assistance.
[¶ 4} When Patrolman Eric S. Parker of the Oak Harbor Police Department arrived on the scene, appellant became very angry because he had been arrested by Parker on a prior occasion. Officer Biggert told Patrolman Parker that he was attempting to determine who was driving the truck when it went into the ditch. Parker told appellant to stand in front of the police cruiser while Biggert talked to Hetrick. According to *Page 3 
Parker, appellant told him that he was not driving the truck because he was "really drunk/ blitzed." After Officer Biggert mentioned that he had seen the truck parked at "Donna Wilkins' house" about 15 minutes before he received the call from dispatch, appellant insisted that Wilkins drove the truck into the ditch. He claimed that he arrived on the scene by means of a "four wheeler" and was trying to get the truck out of the ditch when Officer Biggert arrived.
[¶ 5} Because appellant smelled strongly of alcohol, had very red, glassy eyes, and admitted that he was drunk, Patrolman Parker believed that he was intoxicated and was the individual who drove the truck into the ditch. Parker expressed this belief to Officer Biggert, who decided to arrest appellant for driving while under the influence of alcohol. As Biggert tried to handcuff appellant he became very belligerent and tried to pull away. It took both officers to finally handcuff Goehring and to walk him to Patrolman Parker's police car. Appellant managed to wedge himself between the corner of the car door and the body of the car, refusing to get into the rear seat. Parker was not able to physically force appellant into the rear seat; therefore, he squirted pepper spray in appellant's eyes. Appellant bent over, and Parker "threw" him into the back seat.
[¶ 6} Patrolman Parker then walked back toward the truck to help Officer Biggert, but heard a loud kicking sound emanating from his own police vehicle. Parker turned and ran back. By the time he reached his car, appellant had kicked the window off its track and the door frame was completely away (about two to three inches) from the car. Goehring was screaming at the officer, telling him to wipe the spray out of his eyes. *Page 4 
After appellant laid on his stomach on the rear seat and allowed the officer to secure his right ankle to the handcuffs with a leg "iron" or shackle, Parker wiped the pepper spray out of appellant's eyes.
[¶ 7} During the ride to the Ottawa County Detention Facility, appellant managed to sit upright in the rear seat of the patrol car, was "flailing around" making the car rock, and repeatedly yelled at Parker, stating: "When I get out of jail, I'm coming for you. You're a dead man. I'm coming to your house to get you. You're a F'ing dead man." Parker arrived at the detention center and transferred custody of appellant.
[¶ 8} On March 30, 2006, appellant, who was still in the detention center, was either talking on the telephone or just commencing a telephone call when Deputy Joseph Sedlak of the Ottawa County Sheriffs Department walked past him. Sedlak said, "Hi" to appellant and asked him how he was doing. Appellant replied, saying that he was having a "hard time." Appellant told Sedlak to tell Officer Parker that he was a dead man. Sedlak was allowed, over defense counsel's objection, to testify to this conversation at appellant's trial. The trial court also permitted the prosecution to play a videotape of the discourse between Deputy Sedlak and appellant.
[¶ 9} On April 7, 2006, a jury found appellant guilty of: (1) driving under suspension, a violation of R.C. 4510.11(A) and a misdemeanor of the first degree; (2) driving while under the influence of alcohol, a violation of R.C. 4511.19(A)(1)(a) and a misdemeanor of the first degree; (3) intimidation of a public servant, a violation of R.C.2921.03(A), and a felony of the third degree; (4) intimidation of a witness, a violation of *Page 5 
R.C. 2921.04(B), and a felony of the third degree; (5) retaliation, a violation of R.C. 2921.05(A)and a felony of the third degree; and (6) criminal damaging, a violation of R.C. 2909.06(A)(1) and a misdemeanor of the second degree. On July 11, 2006, appellant filed a motion for a new trial based upon newly discovered evidence of possible juror misconduct. The trial court sentenced appellant on July 19, 2006[1] . On October 12, 2006, the trial court entered a judgment in which it found that no juror misconduct occurred, thereby, in essence, denying appellant's motion for a new trial. Appellant sets forth the following assignments of error:
[¶ 10} "The trial court improperly allowed the state to use evidence in their case in chief [sic] to show that Appellant has a propensity for violence or that the conduct of the appellant was in some way a pattern, and this evidence was allowed even though it was clearly more prejudicial than probative on the issue contrary to the mandates provided by the Ohio Rules of Evidence. *Page 6 
 [¶ 11} "The Jury verdict of intimidation should be reversed because it was against the manifest weight of the evidence.
[¶ 12} "The trial court erred in overruling the defendant's motion for a new trial based on juror misconduct."
[¶ 13} In his first assignment of error, appellant contends that the trial court erred in allowing Sedlak to testify regarding a threat to "another officer" and by permitting the prosecution to show the videotape of the same. Appellant claims that this evidence was offered to show that he has a propensity for violence and was inadmissible under Evid.R. 404, under Evid.R. 608, and under Evid.R. 403(A).
[¶ 14} A trial court has broad discretion in allowing the admission of evidence. State v. Maurer (1984), 15 Ohio St.3d 239, 265. An appellate court will not disturb evidentiary rulings absent an abuse of discretion that produces a material prejudice to the aggrieved party. State v.Roberts, 156 Ohio App.3d 352, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in reaching its ruling. State v. Adams (1980), 62 Ohio St.2d 151, 157 (citations omitted).
[¶ 15} Other acts evidence is admissible if it tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B); R.C. 2945.59. Evid.R. 404(B) allows the admission of "other acts" evidence if it is "related to and share[s] common features with the crime in question * * *." State v.Lowe (1994), 69 Ohio St.3d 527, 531. *Page 7 
 [¶ 16} R.C. 2921.03(A), provides, in pertinent part, that "no person * * * by unlawful threat of harm to any person * * * shall attempt to influence, intimidate, or hinder a public servant * * * in the discharge of the person's duty." The definition of a "public servant" includes any "public official." R.C. 2921.01(B)(1). A law enforcement officer is a "public official." R.C. 2921.01(A). R.C. 2921.04(B) prohibits, among other things, the knowing attempt by threat of harm to intimidate a witness involved in a criminal action. Under R.C. 2921.05(A), no person can purposely, by force or harmful threat, retaliate against a public servant who is involved in a criminal action because that person discharged his or her duty as a public servant.
[¶ 17} In the present case, Patrolman Parker was the public servant to whom appellant knowingly issued a harmful threat in order to intimidate, influence or hinder Parker in the discharge of his public duties, specifically, during appellant's arrest and in providing testimony at appellant's trial. The same is true on the charge of retaliation. This threat was also made to intimidate Parker in his separate role as a witness. It is undisputed that Sedlak's testimony and the videotape revealed that appellant made the same death threat against Patrolman Parker in 2006, but prior to appellant's trial, as he made at the time of his arrest. Therefore, this statement constitutes an "other act" within the meaning of R.C. 2945.59 and Evid.R. 404(B). Nevertheless, testimony regarding this other act is admissible because it is inextricably related to and shares common features with the charges of intimidation of a public servant and/or witness and retaliation by threat of harm to a public servant/witness. Therefore, it was as properly admitted to show *Page 8 
intent and absence of mistake or accident pursuant to Evid.R. 404(B).State v. Curry (1975), 43 Ohio St.2d 66, 73.
[¶ 18} Appellant next argues that the trial court abused its discretion in admitting said statement as proof of the offenses of intimidation in violation of Evid.R. 608. Appellant claims that Sedlak's testimony would be admissible only if he, meaning appellant, had testified, thereby opening the door to evidence of his "bad character" on cross-examination. Evid.R. 608 governs the impeachment of awitness with character evidence relevant to the truthfulness or untruthfulness of that witness, see Evid.R. 608(A), or with extrinsic evidence of the prior conduct of a witness's bad conduct related to the truthfulness or untruthfulness of that conduct, see Evid.R. 608(B). Appellant was not a witness in this cause; therefore, Evid.R. 608 is inapplicable. To repeat, Sedlak's testimony and the videotape were admissible into evidence under Evid.R. 404(B).
[¶ 19} Citing Evid.R. 403(A), appellant next maintains that even if the second threat against Patrolman Parker is relevant, its relevancy is outweighed by its prejudicial effect. We have searched the record for any objection to the disputed evidence based upon Evid.R.403(A) and found none. The failure to promptly object and call to the attention of the trial court an error at a time when the trial court can prevent or correct it amounts to a waiver of the right to complain of any error on appeal except for plain error. State v. Lott (1990), 51 Ohio St.3d 160,174, citing State v. Gordon (1971), 28 Ohio St.2d 45, paragraph two of the syllabus. An alleged error does not constitute plain error pursuant to Crim.R. 52(B) "* * * unless, but for the error, the outcome of the trial clearly *Page 9 
would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
[¶ 20} Here, the outcome of the trial with regard to the charges of intimidation would not have been different. There was more than enough evidence, as discussed in appellant's second assignment of error, to prove, beyond a reasonable doubt, that appellant was guilty of intimidation of a public servant/witness. Therefore, appellant's argument is without merit.
[¶ 21} For all of the foregoing reasons, appellant's first assignment of error is found not well-taken.
[¶ 22} In his second assignment of error, appellant contends that the jury's determination that he violated R.C. 2921.03(A) is against the manifest weight of the evidence.
[¶ 23} In determining whether a verdict is against the manifest weight of the evidence, this court sits as a "thirteenth juror." State v.Thompkins (1997), 78 Ohio St.3d 380, 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. In resolving conflicts in the evidence, we must determine whether the finder of fact "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. Nevertheless, this court must keep in mind that it is the trier of fact's duty to determine the credibility of *Page 10 
a witness; accordingly, our ability to consider credibility is limited.State v. Reynolds, 10th Dist. No. 3692, 2004-Ohio-3692, ¶ 13 (citation omitted).
[¶ 24} As noted above, the crime of intimidation, as set forth in R.C.2921.03(A), prohibits a person who acts knowingly and by force or by unlawful threat of harm from attempting "to influence, intimidate, or hinder a public servant," in the discharge of his duty. An individual acts knowingly, regardless of his or her purpose, when that person is aware that his or her conduct will probably cause a particular result "or will probably be of a certain nature." R.C. 2901.22(B).
[¶ 25} Appellant claims that the threat of harm that he made to Patrolman Parker in no way influenced, intimidated or hindered that officer in the discharge of his duty. Appellant argues that the threat that he made could be construed in two ways: either as an attempt to influence, intimidate, or hinder Parker or as the means employed by appellant to vent his rage and frustration at being confronted and arrested by this officer once again.
[¶ 26} Appellant fails to consider the entire context in which the threat was made or that he used force in an attempt to hinder Parker in discharging his duty. In particular, appellant was previously arrested by Parker and became very angry when the patrolman was called to the scene to aid Officer Biggert. Appellant had to be handcuffed behind his back, pepper sprayed, and literally forced into the patrol car by both law enforcement officers. He caused significant damage to Parker's patrol car. Furthermore, Parker testified that the threat bothered him because he has a family, and appellant knows where *Page 11 
he lives. Taken together, a jury could find, beyond a reasonable doubt, that, at the very least, appellant knowingly, either by force or threat of harm hindered Patrolman Parker in the discharge of his law enforcement duties. Accordingly, we conclude that the trial court's judgment on the charge of intimidation of a public servant is not against the manifest weight of the evidence. Appellant's second assignment of error is found not well-taken.
[¶ 27} In his third assignment of error, appellant maintains that the common pleas court erred in overruling his motion for a new trial because he established that one of the jurors in this case engaged in misconduct by making comments about the trial on his internet "blog."
[¶ 28} In appellant's motion for a new trial, based upon newly discovered evidence, and trial counsel's affidavit in support of the motion, counsel indicated that, on July 2, 2006, he was searching for newspaper accounts concerning appellant's sentencing hearing when he inadvertently discovered the "blog"[2] of one of the jurors in appellant's trial.
[¶ 29} On April 4, 2006, the first day of appellant's trial, this juror wrote: "Serving on this case just goes to show how opinionated I am. Perhaps I'm more of a leader than I'm willing to give myself credit for. But, I dare anyone to cross me on this *Page 12 
verdict." Later in the blog, however, the juror stated: "* * * well . . I can't talk about the case dammit, and that's so highly frustrating." On April 6, 2006, after the jury had returned its guilty verdict, the juror wrote:
[¶ 30} "Well, it figures. Had a horrible time not being able to talk about the case. But now after finally having deliberations, it's like bleh, I don't want to talk about this shit anymore. * * * Basically, I feel like I was the only [person] playing devil's advocate and presuming this guy was innocent. * * *." The blog then goes on to discuss the evidence in the case and how the evidence adduced on the second day of trial convinced the juror/blogger that appellant was guilty.
[¶ 31} Appellant claimed that the April 4, 2006 blog improperly discussed the case on the first day of trial and showed that the juror had "pre-decided the verdict." Appellant also asserted that this blog contained an implied threat to any jurors that might disagree with him. Appellant urged that the test for juror misconduct was met because the juror in this cause:
[¶ 32} "* * * not only composed an online journal regarding the case while the case was still pending, but did so in an area where jurors once acquainted with the `blogger' from meeting him during jury service could immediately become exposed to public commentary about the case and implied threats against anyone who `crossed' him in regards to the verdict. Additionally, the existence of the blog and its copies are independent, verifiable evidence that misconduct occurred during the course of the trial." *Page 13 
 [¶ 33} After holding a hearing, the trial court determined that the comments made on April 4, 2006, did not express any bias as to a guilty or not guilty verdict. The court below further determined that the juror's April 6, 2006 comments were post-verdict; therefore, he could speak freely.
[¶ 34} Crim.R. 33(A)(6) permits a defendant to file a motion for a new trial based upon newly discovered evidence. In the case of a jury trial, this motion must be filed within 120 days after the day that the verdict was rendered. Crim.R. 33(B). In this cause, appellant timely filed his motion for a new trial. We cannot overturn the trial court's denial of appellant's motion for a new trial, absent an abuse of discretion.State v. LaMar, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶ 82. To repeat, in order to find an abuse of that discretion, we must determine the common pleas court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. State v. Adams,62 Ohio St.2d at 157.
[¶ 35} We can find no such abuse. While the profanity used by the juror on his blog on April 4, 2006 may be offensive, that juror makes clear the fact that he cannot discuss the case while it is pending. Further, while the juror states that he is opinionated, there is no indication in the message as to the gist of his opinion. Moreover, there is no evidence in the record of this cause establishing that any of the other 11 jurors saw the blog either during or after appellant's trial. Thus, we find that the trial court did not abuse its discretion in finding that no juror misconduct existed as a result of the April 4, 2006 blog. Appellant raises no error with regard to the April 6, 2006 blog. In any event, we *Page 14 
would concur with the trial court in concluding that at that point the verdict was rendered and the juror was free to discuss the process by which he reached his determination that appellant was guilty. Accordingly, appellant's third assignment of error is found not well-taken.
[¶ 36} The judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Arlene Singer, J., Thomas J. Osowik, J. CONCUR.
[1] The common pleas court sentenced appellant to: (1) six months in the Ottawa County Detention Facility for the violation of R.C. R.C.4510.11(A); (2) three days in the Ottawa County Detention Facility for violation of R.C. 4511.19(A)(1)(a); (3) four years in prison for the violation of R.C. 2921.03(A); (4) the court determined that the violations of R.C. 2921.03(A) and 2921.04(B) were allied offenses of a similar import and sentenced appellant to four years in prison on these convictions; and (5) four years in prison for the violation of R.C.2921.05(A) and 90 days in the Ottawa County Detention facility for the violation of R.C. 2909.06(A)(1). The court ordered that the sentences imposing time to be spent in the detention facility were to be served concurrently to each other and to the four year sentences of imprisonment. The two four year sentences were ordered to be served consecutive to each other. In addition, appellant's commercial driver's licenses were suspended for a period of time, and he was ordered to pay a mandatory fine.
[2] A "blog" is a "web site that contains an online personal journal with reflections, comments, and often hyperlinks provided by the writer." "blog." Merriam-Webster Online Dictionary. 2007.http://www.merriam-webster.com (Oct. 10, 2007). *Page 1