DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from an August 2, 2006 judgment of the Lucas County Court of Common Pleas, wherein a jury found appellant, Jermaine E. Sanford, guilty of aggravated burglary, a first-degree felony in violation of R.C. 2911.11(A)(2), and aggravated robbery, a first-degree felony in violation of R.C. 2911.01(A)(1), both with firearm specifications pursuant to R.C. 2941.145. The court *Page 2 
sentenced appellant to nine years in prison for Count I and nine years in prison for Count II, to be served concurrently. In addition, the court imposed a three year mandatory term of incarceration for each firearm specification, to be served concurrently with each other, but consecutive with the nine year sentence for a total sentence of 12 years of incarceration. Appellant now raises the following sole assignment of error:
 {¶ 2} "The verdicts were unsupported by sufficient evidence and against the manifest weight of the evidence."
 {¶ 3} The evidence at trial indicated that in the early morning of May 7, 2006, Laquelle Sims and her boyfriend, Kijuan Banks, were asleep in the second floor bedroom of their apartment at 4811 Douglas Road. She was suddenly awakened by a man turning on the bedroom light and pointing a gun in her face. The intruder demanded that Laquelle and Kijuan tell him where their money was located. The intruder then forced her and Kijuan downstairs where they were confronted by a second man holding a gun. Both men kept demanding that the couple give up their money. At some point, Kijuan managed to escape the apartment, leaving Laquelle inside with the two intruders. Kijuan later testified that he escaped out the front door and attempted to flag down the neighbors to call the police. Eventually, during the commotion, the intruders fled.
 {¶ 4} Laquelle and Kijuan both described the man upstairs who demanded the money as a tall, dark-skinned man with large eyes and nothing covering his face. The second intruder was described as a shorter lighter skinned man with a scarf or bandana covering his face. Laquelle provided a detailed description of the upstairs perpetrator *Page 3 
both to the police who responded on the scene and in open court. Both she and Kijuan identified the intruder who demanded the money upstairs as appellant, Jermaine Sanford.[1] They both also stated that appellant held a gun and pointed it at them. Although the descriptions of the gun were similar, they were not identical.[2] Neither Laquelle nor Kijuan reported to police that any property had been taken during the incident on May 7, 2006.
 {¶ 5} On May 11, 2006, on Lagrange Street between Palmer and Austin Streets, Laquelle and Kijuan were driving and noticed appellant standing at a bus stop wearing Kijuan's coat.[3] When later asked by police how they knew the coat belonged to Kijuan, they identified a distinctive red stain or discoloration on a portion of the coat caused by Kijuan sitting in red Kool-Aid. Nothing in evidence indicated that Laquelle and Kijuan knew the coat was missing before May 11, 2006. They both testified at trial that appellant was the same person that came into their apartment during the May 7, 2006 incident. *Page 4 
 {¶ 6} They then proceeded to pull over and approached the bus stop. Kijuan asked appellant if appellant knew either of them. Appellant stated that he did not. When asked how he obtained his coat, appellant stated that it was given to him by the appellant's twin brother. Kijuan instead claimed the coat belonged to him. At this point, appellant denied this and entered the bus. As this exchange occurred between Kijuan and appellant, Laquelle called the police on a cell phone and followed the bus in her vehicle. When the police met them at one of the bus stops, the police entered the bus and arrested appellant.
 {¶ 7} At trial, several statements made by appellant were admitted. After signing a waiver of Miranda rights, appellant told officers that he did not have a twin brother and that he previously lied about that fact. Appellant told the officers that he received the coat as a gift, but could not remember from whom.[4] Appellant denied being at the victims' apartment on May 7, 2006, but when asked about the gun used at the victims' apartment, appellant stated "I didn't have a gun during this incident." He later again denied being there, but did admit that what he had said "didn't sound good." Finally, appellant made a statement to Kijuan during a brief conversation at the county jail. When Kijuan asked him why he came into their home, appellant said "it was the wrong house."
 {¶ 8} The defense presented two witnesses at trial, Steve Palacio and James Covington. Both of the defense witnesses stated that they were acquaintances with appellant since before May 7, 2006, and they had seen appellant wearing the coat in *Page 5 
question in January or February 2006. On cross-examination of Covington, however, the witness stated that the coat that Kijuan was wearing in a picture was the "exact same coat" as the coat recovered from appellant on May 11.
 {¶ 9} In his sole assignment of error, appellant challenges the sufficiency and manifest weight of the evidence for his aggravated burglary and aggravated robbery convictions.
 {¶ 10} Although both are raised by appellant in one assignment of error, a challenge to the sufficiency of the evidence differs from a challenge to the manifest weight of the evidence. State v. Scott,101 Ohio St.3d 31, 2004-Ohio-10, ¶ 30.
 {¶ 11} The phrase "sufficiency of the evidence" raises a question of law as to whether the evidence is legally adequate to support a verdict as to all the elements of a crime. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Under the sufficiency standard, an appellate court examines "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In addition, a denial of due process occurs if a conviction is based on legally insufficient evidence. Tibbs v. Florida (1982), 457 U.S. 31, 45, citing Jackson v. Virginia (1979), 443 U.S. 307. *Page 6 
 {¶ 12} We now turn to whether the evidence of each element of the offenses for which appellant was convicted is sufficient as a matter of law.
 {¶ 13} Appellant argues that his convictions for aggravated robbery and aggravated burglary were based on insufficient evidence. The basis of this argument is upon that fact that the victims reported no property being taken on the day of the May 7, 2006 incident because neither victim saw appellant leave the scene carrying the coat. This argument is unfounded because ample evidence was presented at trial to prove, beyond a reasonable doubt, that appellant committed aggravated robbery and aggravated burglary.
 {¶ 14} R.C. 2911.11(A)(2), provides:
 {¶ 15} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 16} "(1) * * *
 {¶ 17} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 18} Here, viewing the evidence in a light most favorable to the prosecution, it is clear that the evidence is sufficient to support a conviction for aggravated burglary. Officer testimony indicated that the apartment of Laquelle and Kijuan was broken into by *Page 7 
force at the rear of the building, as if someone kicked in the door. Neither Laquelle nor Kijuan had given permission for the two men to enter their home on the morning of May 7, 2006. Thus, there was sufficient evidence of a trespass in an occupied structure. It is also evident from the circumstances that the intent of the wrongful entry into the apartment was to commit a criminal offense. Both victims' testimony indicated that the intruder pointed a gun in their faces and demanded their money. Moreover, the victims testified with particularity as to the identity of the intruder. At trial, both victims identified appellant as the upstairs intruder. We, therefore, conclude that sufficient evidence was offered at appellant's trial to prove, beyond a reasonable doubt, that he committed the offense of aggravated burglary.
 {¶ 19} R.C. 2911.01(A)(1), provides:
 {¶ 20} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 21} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 22} A "theft offense" is defined as any of the following: aggravated robbery, robbery, aggravated burglary, burglary, breaking and entering, theft, unauthorized use of property, etc. See R.C. 2313.01(K). *Page 8 
 {¶ 23} There is sufficient evidence to support a finding that appellant committed a theft offense. R.C. 2313.02 provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent * * * [or] by threat * * * [or] by intimidation." Laquelle and Kijuan reported the theft of Kijuan's coat when he recognized appellant wearing it at the bus stop on May 11, 2006. Furthermore, they both testified that neither gave consent for appellant to take the coat from their apartment or wear it. The fact that the victims did not see appellant specifically carrying the coat while fleeing their home goes to the weight of the evidence and credibility of the victims' testimony. It does not make the other evidence of the theft insufficient as a matter of law. Given the circumstances of the incident and examining the evidence in a light most favorable to the prosecution, the evidence demonstrates that a theft offense occurred, and it was committed by appellant.
 {¶ 24} In addition to the prosecution submitting sufficient evidence that a theft offense occurred, the prosecution also submitted sufficient evidence for the remaining elements of aggravated robbery. R.C.2911.01(A)(1) merely requires a theft offense and the additional elements of possession or control of a deadly weapon and the display, brandishing, use, or indication of the possession of the weapon. The evidence in the record shows that appellant pointed a gun at Laquelle and Kijuan when he demanded that they give him the money. Thus, sufficient evidence exists to support the jury's finding that appellant violated R.C. 2911.01(A)(1) by having "a deadly weapon on or about [his] *Page 9 
person" while "attempting or committing a theft offense." A rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. We, therefore, conclude that sufficient evidence was offered at appellant's trial to prove, beyond a reasonable doubt, that he committed the offense of aggravated robbery.
 {¶ 25} In determining whether a verdict is against the manifest weight of the evidence, this court sits as a "thirteenth juror." State v.Thompkins (1997), 78 Ohio St.3d 380, 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. In resolving conflicts in the evidence, we must determine whether the finder of fact "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Moreover, this court must keep in mind that it is the trier of fact's duty to determine the credibility of a witness; accordingly, our ability to consider credibility is limited. State v. Reynolds, 10th Dist. No. 3692, 2004 Ohio 3692, ¶ 13 (citation omitted).
 {¶ 26} In this case, the proof of the elements of the charged offense was presented solely through witness testimony. There were no fingerprints, useable footprints, or any other physical evidence linking appellant to the crime scene. Therefore, the jurors must have believed the testimony of Laquelle, Kijuan, and the other witnesses on the contested issues relating to the charges of aggravated burglary and aggravated robbery, to wit, *Page 10 
(1) whether appellant was the person who entered the home of the victims and pointed a gun at them; and (2) whether appellant took possession of a coat belonging to the victim, Kijuan Banks.
 {¶ 27} After a thorough review of the evidence in this case, we find that the jury did not clearly lose its way and create such a manifest miscarriage of justice that appellant's conviction should be reversed and a new trial ordered. In support of this conclusion, we note that both Laquelle and Kijuan recognized appellant as the intruder into their home from his distinctive facial features. They also recognized Kijuan's coat worn by appellant because of a unique red discoloration on particular portions of the coat.
 {¶ 28} Although the two defense witnesses did testify that they had seen appellant wearing the coat in question before May 7, 2006, the jury could have certainly disregarded this testimony as not credible. In light of the fact that the defense presented no witness to corroborate appellant's story that the coat was a gift and Covington's acknowledgment that the coat in question was the "exact same" as the coat owned by Kijuan, it is clear that the evidence does not weigh heavily against conviction. Accordingly, appellant's sole assignment of error is found not well-taken.
 {¶ 29} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 11 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., William J. Skow, J., Thomas J. Osowik, J., CONCUR.
[1] Although the appellant never testified at trial, the defense argued at closing that appellant was not the person who burglarized the victims' apartment. Instead, the defense maintained that Laquelle and Kijuan were both mistaken as to the identity of the intruder.
[2] Laquelle described the gun as "big, with a long — a long handle." Kijuan described the gun as looking like "a mac 10 or mac 9 or something like that like an Uzi-type of gun * * * I remember seeing a clip, a long clip at the bottom with a short tip."
[3] The coat was described as a black Alfonzon coat purchased by Kijuan at New York Collection at the former Westgate Shopping Center. The coat, as well as a picture of Kijuan wearing the coat taken in December 2006, was admitted as state's evidence.
[4] No defense witness was presented at trial to corroborate appellant's previous statement that the coat was given to him as a gift. *Page 1