**[This opinion has been published in *Ohio Official Reports* at 78 Ohio St.3d 380.]**

THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, V. THOMPKINS,
APPELLEE AND CROSS-APPELLANT.

**[Cite as *State v. Thompkins*, 1997-Ohio-52.]**

*Criminal law—Firearm offenses—Type of evidence sufficient to prove operability of a firearm—R.C. 2923.11(B)(1) and (2), construed and applied—Evidence—Legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different—Authority of court of appeals to reverse judgment of trial court—Section 3(B)(3), Article IV of the Ohio Constitution, construed and applied.*

1. A firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm. (*State v. Murphy* [1990], 49 Ohio St.3d 206, 551 N.E.2d 932, *State v. Jenks* [1991], 61 Ohio St.3d 259, 574 N.E.2d 492, and *State v. Dixon* [1995], 71 Ohio St.3d 608, 646 N.E.2d 453, followed; R.C. 2923.11[B][1] and [2], construed and applied.)

2. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.

3. To reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary. (Section 3[B][3], Article IV of the Ohio Constitution, applied; *Brittain v. Indus. Comm.* [1917], 95 Ohio St. 391, 115 N.E. 110, overruled.)

4.      To reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required. (Section 3[B][3], Article IV of the Ohio Constitution, construed and applied.)

(No. 95-2647—Submitted February 18, 1997—Decided May 14, 1997.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Hamilton County, No. C-940513.

_____

{¶ 1} On June 4, 1993, appellee and cross-appellant Booker T. Thompkins entered the Busken Bakery located at 8442 Vine Street, Cincinnati, Ohio, and asked the attending clerk, Janice Brinkman, for an employment application. Brinkman provided an application to Thompkins. When she turned back toward Thompkins after reaching for an application form, Brinkman noticed that Thompkins had a gun and that he was pointing it directly at her. Thompkins told Brinkman that he was committing a "holdup" and to be "quick, quick." Brinkman removed approximately eight hundred dollars from the cash register. She put the money in a bag and handed it to Thompkins. Thompkins took the money and he told Brinkman not to call the police for ten minutes. Thompkins left the bakery. He then allegedly hijacked a car in the parking lot to facilitate his escape.

{¶ 2} Subsequently, the police presented Brinkman with a photographic array containing Thompkins's picture. Brinkman picked Thompkins's picture out of the array, and she positively identified him as the person who had robbed the bakery.

{¶ 3} On July 28, 1993, Thompkins was indicted by a Hamilton County Grand Jury for aggravated robbery (count one) and grand theft (count two). Count one also included a firearm specification and a prior-conviction specification. Count two set forth that Thompkins had previously been convicted of an aggravated

robbery charge in 1980 and an aggravated burglary offense in 1976. Additionally, count two carried a specification that Thompkins had been convicted of an offense of violence (the 1980 aggravated robbery conviction).

{¶ 4} Thompkins was tried by a jury. The jury found Thompkins guilty of the aggravated robbery charge and the firearm specification. The jury also found Thompkins guilty of the grand theft charge. The trial court sentenced Thompkins to fifteen to twenty-five years on the aggravated robbery conviction and three to fifteen years for the grand theft offense. The trial court ordered that the sentences run concurrently. Thompkins was also sentenced to three additional years of actual incarceration on the firearm specification.

{¶ 5} Thompkins appealed to the Court of Appeals for Hamilton County, setting forth numerous assignments of error. The court of appeals, in a split decision (Gorman J., dissenting), reversed Thompkins's firearm conviction, finding that there was "*insufficient evidence* in the record to prove operability of the firearm." (Emphasis added.) The court of appeals also held, among other things, that the aggravated robbery offense and grand theft charge were allied offenses of similar import. Accordingly, the court of appeals reversed the trial court's judgment in part, affirmed it in part, and remanded the cause to the trial court for purposes of resentencing.

{¶ 6} The cause is now before this court upon the allowance of a discretionary appeal and cross-appeal.

_____

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Christian J. Schaefer*, Assistant Prosecuting Attorney, for appellant and cross-appellee.

*H. Fred Hoefle*, for appellee and cross-appellant.

_____

**DOUGLAS, J.**

{¶ 7} The state of Ohio has filed an appeal from the judgment of the court of appeals and Thompkins has filed a cross-appeal. The parties have set forth various issues for our consideration. However, we limit our review solely to two important issues. The first issue concerns what type of evidence is sufficient to prove the operability of a firearm. The second issue involves whether the court of appeals properly reversed Thompkins's firearm conviction by a majority vote, given the language of Section 3(B)(3), Article IV of the Ohio Constitution. Additionally, the second issue requires a determination of whether the phrase "weight of the evidence" as used in Section 3(B)(3), Article IV, is equivalent to the legal concept of "sufficiency of the evidence."

I

{¶ 8} The court of appeals, by a majority vote, concluded that the state failed to prove that the firearm used by Thompkins during the commission of the robbery was operable. The majority noted that "the alleged firearm was never recovered. Brinkman did testify that Thompkins, during the course of the robbery, had in his hand a black gun that appeared to her to be an automatic; that she was frightened; that Thompkins advised her that it was a 'holdup'; that while she was taking the money from the cash register, Thompkins said 'quick, quick'; that prior to fleeing from the scene, Thompkins instructed her not to call the police for ten minutes; and that Thompkins did not expressly threaten to shoot her. In addition, once outside, an individual matching Thompkins's physical characteristics allegedly forced two persons, who did not testify at trial, from their motor vehicle by brandishing a handgun."

{¶ 9} Notwithstanding, the court of appeals' majority held that such evidence was insufficient to sustain a conviction because "none of the recognized indicia of firearm operability was shown to be present in this case, *viz.*, the actual gun, bullets, the smell of gunpowder, bullet holes, or verbal threats by the robber

that he would shoot the victim. Indeed, other than Brinkman's testimony that she saw a gun, little evidence was produced at trial to prove that the alleged gun was operable." We disagree.

{¶ 10} In *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932, we modified *State v. Gaines* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68, with respect to the type of evidence required to prove a firearm specification beyond a reasonable doubt. Specifically, in *Murphy*, we held: "The state must present evidence beyond a reasonable doubt that a firearm was operable at the time of the offense before a defendant can receive an enhanced penalty pursuant to R.C. 2929.71(A). *However, such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime."* (Emphasis added.) *Id.* at syllabus.

{¶ 11} In *Murphy,* we found that there was sufficient evidence to establish proof beyond a reasonable doubt that the defendant possessed a firearm and that the firearm was operable or could readily have been rendered operable at the time of the offense. The defendant in *Murphy* entered a United Dairy Farmers store and announced that he was robbing it. He then took a T-shirt from inside his pants, unwrapped it, pulled out a gun, and he pointed the gun at the store clerk and a customer. The defendant waived the gun back and forth while announcing that if the clerk did not give him the money, he would kill him. The clerk and the customer described the gun as a one- or two-shot silver or chrome derringer.

{¶ 12} The situation in *Murphy* is very similar to what occurred in the case at bar. The only noteworthy difference between *Murphy* and what occurred here is that the defendant in possession of the gun in *Murphy explicitly* threatened that he would kill the store attendant. Here, Brinkman did not testify that Thompkins threatened to shoot her. Rather, the threats made by Thompkins to Brinkman were of an *implicit* nature, *i.e.*, Thompkins's pointing the gun at Brinkman and telling her that he was committing a "holdup" and to be "quick, quick."

**{¶ 13}** However, the fact that Thompkins did not explicitly threaten Brinkman does not take away from the fact that Brinkman thought her life was in danger. Even absent any explicit verbal threats on the part of Thompkins, the trier of fact in this case could have reasonably concluded, based on the totality of the circumstances, that Thompkins was in possession of a firearm at the time of the offense, that is, a deadly weapon capable of expelling projectiles by an explosive or combustible propellant.

**{¶ 14}** More recently, in *State v. Dixon* (1995), 71 Ohio St.3d 608, 646 N.E.2d 453, we determined the issue of the relevance of explicit versus implicit threats made by an assailant in this type of case. In *Dixon*, a jury found the defendant guilty of aggravated robbery and a firearm specification.[1] The defendant appealed his convictions to the Court of Appeals for Greene County. The court of appeals reversed the firearm conviction, finding that the state had failed to prove the specification beyond a reasonable doubt. The state appealed and the court of appeals certified the following question to this court for our determination: "Where a defendant brandishes a gun and *implicitly but not expressly* threatens to use the gun as a gun, are those implicit threats sufficient to establish the operability of the gun so that the defendant can be found guilty of a firearm specification?" (Emphasis added.) We, in effect, answered the question in the affirmative. We

---

1. The facts in *State v. Dixon* (1995), 71 Ohio St.3d 608, 646 N.E.2d 453, as summarized by the Court of Appeals for Greene County, are as follows:

"Deborah Tucker was working by herself as a clerk at the Circle K store in Xenia, Ohio, at about 11:30 p.m. on November 20, 1992. She had begun cleaning up the store in preparation for closing when a man [the defendant] walked in and asked for a carton of cigarettes. After she rang up the sale, the man said '[y]ou know what I want, open up the drawer, give me everything including the food stamps.' The man then hit Tucker on the head with what she described as a gun. She was subsequently diagnosed as having sustained a concussion from the blow.

"Tucker opened the drawer and gave the man everything in it. During the course of the robbery, the man patted the object that Tucker described as a gun, which was tucked in his waistband, and said 'I don't want to have to use this.' The man then took the money, cigarettes, and a stuffed gorilla and left the store." *State v. Dixon* (Nov. 1, 1993), Greene App. No. 93-CA-18, unreported.

reversed the judgment of the court of appeals as to the certified issue only, and reinstated the judgment of the trial court on the authority of *Murphy*, *supra*. *Dixon*, 71 Ohio St.3d at 609, 646 N.E.2d 453. Hence, given our holdings in *Dixon* and *Murphy*, *supra*, it should be abundantly clear that where an individual brandishes a gun and implicitly but not expressly threatens to discharge the firearm at the time of the offense, the threat can be sufficient to satisfy the state's burden of proving that the firearm was operable or capable of being readily rendered operable.

{¶ 15} Further, firearm is defined in R.C. 2923.11(B)(1) as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable." R.C. 2923.11(B)(2) provides that "[w]hen determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, *the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm."* (Emphasis added.)

{¶ 16} Notably, the General Assembly in R.C. 2923.11(B)(2) set forth that the trier of fact may rely upon circumstantial evidence in determining whether the firearm was operable. Moreover, the General Assembly in that subsection did not qualify the type of "representations" or "actions" that may be considered by the fact finder. Thus, it is apparent that the General Assembly intended that the state "can rely upon all of the surrounding facts and circumstances in establishing whether a firearm was used in the commission of a felony." *Murphy*, 49 Ohio St.3d at 208, 551 N.E.2d at 934. In this regard, we agree with the observations of Judge Gorman in his dissenting opinion in the court of appeals, wherein he cogently noted that, based upon our decisions in *Murphy* and *Dixon*, *supra*, and *State v. Jenks* (1991),

61 Ohio St.3d 259, 574 N.E.2d 492,[2] proof of the operability of a firearm can be established by circumstantial evidence, which can consist of the brandishing of a firearm by the defendant and the implicit threat to shoot it. We agree with Judge Gorman that the evidence in this case "was clearly sufficient for the jury to find Thompkins guilty of the firearm specification."

{¶ 17} Furthermore, if we were to accept the findings of the court of appeals' majority in this case, an individual who commits a holdup with a real gun could possibly avoid a firearm specification conviction simply by not saying anything and by not discharging the firearm at the time of the offense. In our judgment, such a result would eviscerate the underlying purposes of the penalty-enhancement provisions of R.C. 2923.11(B)(1) and (2). In *Murphy*, we noted that in enacting (former) R.C. 2929.71,[3] the General Assembly intended to send a message to the criminal world: "'If you use a firearm you will get an extra three years of incarceration.'" *Id*. 49 Ohio St.3d at 208, 551 N.E.2d at 934.

{¶ 18} Therefore, we hold that a firearm penalty-enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm.

---

2. In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, we held: "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. * * *" *Id*., paragraph one of the syllabus.

3. R.C. 2929.71 has been repealed, effective July 1, 1996. The firearm enhancement provisions are now contained in R.C. 2929.14.

II

{¶ 19} Section 3(B)(3), Article IV of the Ohio Constitution provides:

"A majority of the judges hearing the cause shall be necessary to render a judgment. Judgments of the courts of appeals are final except as provided in section 2(B)(2) of this article. No judgment resulting from a trial by jury shall be reversed on the *weight of the evidence* except by the concurrence of all three judges hearing the cause." (Emphasis added.)

{¶ 20} The state contends that, in reversing Thompkins's firearm conviction, the court of appeals' majority weighed the evidence, and, in doing so, ignored Section 3(B)(3), Article IV, which prohibits reversal on the weight of the evidence of judgments resulting from a trial by jury, except by concurrence of all three appellate judges hearing the case. The state further asserts, relying on *Brittain v. Indus. Comm.* (1917), 95 Ohio St. 391, 115 N.E. 110, that the phrase "weight of the evidence" as contained in Section 3(B)(3), Article IV, is equivalent to the legal concept of "sufficiency of the evidence." Therefore, according to the state, "whether the claim is styled 'sufficiency of evidence' or 'weight of the evidence,' Article IV, Section 3 requires a unanimous court of appeals to reverse a jury verdict." We disagree.

{¶ 21} To begin, we note that the decision of the majority of the court of appeals in the case at bar did not rest upon a finding that Thompkins's firearm conviction was against the weight of the evidence. Rather, the decision of the majority was based specifically on a question of law; that is, whether the evidence was legally insufficient to support the verdict. In fact, the court of appeals' majority explicitly held that there "was *insufficient* evidence in the record to prove operability of the firearm." (Emphasis added.) The decision of the majority was based largely on the fact that during the robbery Thompkins did not verbally threaten to shoot or kill Brinkman.

**{¶ 22}** The state asserts that sufficiency of the evidence and weight of the evidence are synonymous legal concepts. They are not. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.

**{¶ 23}** With respect to sufficiency of the evidence, "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed.1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

**{¶ 24}** Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Robinson*, *supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis added.) Black's, *supra*, at 1594.

10

{¶ 25} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

{¶ 26} Specifically, in *Tibbs*, *supra*, the United States Supreme Court set forth a notable distinction between the effect of a reversal based upon insufficient evidence and one resting upon the weight of the evidence. In *Tibbs*, the court held that the Double Jeopardy Clause does not preclude retrial of a defendant if the reversal was grounded upon a finding that the conviction was against the weight of the evidence. However, retrial is barred if the reversal was based upon a finding that the evidence was legally insufficient to support the conviction. *Id*., 457 U.S. at 47, 102 S.Ct. at 2221, 72 L.Ed.2d at 664-665. In reaching this conclusion, the court observed:

"A verdict of not guilty, whether rendered by the jury or directed by the trial judge, absolutely shields the defendant from retrial. A reversal based on the insufficiency of the evidence has the same effect because it means that no rational factfinder could have voted to convict the defendant.

"* * *

"As we suggested just last Term, these policies do not have the same force when a judge disagrees with a jury's resolution of conflicting evidence and

concludes that a guilty verdict is against the weight of the evidence. * * * A reversal on this ground, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Instead, the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony. This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves. A deadlocked jury, we consistently have recognized, does not result in an acquittal barring retrial under the Double Jeopardy Clause. Similarly, an appellate court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal.

"A reversal based on the weight of the evidence, moreover, can occur only after the State both has presented *sufficient evidence* to support conviction and has persuaded the jury to convict. The reversal simply affords the defendant a second opportunity to seek a favorable judgment. An appellate court's decision to give the defendant this second chance does not create 'an unacceptably high risk that the Government, with its superior resources, [will] wear down [the] defendant' and obtain conviction solely through its persistence." (Emphasis added; citations and footnotes omitted.) *Id.*, 457 U.S. at 41-43, 102 S.Ct. at 2218-2219, 72 L.Ed.2d at 661-662.

{¶ 27} This court has also recognized differences between a reversal grounded on the weight of the evidence and one based on legally insufficient evidence. See, *e.g.*, *Robinson*, *supra*; *In re Disbarment of Lieberman* (1955), 163 Ohio St. 35, 56 O.O. 23, 125 N.E.2d 328; *Brown & Sons v. Honabarger* (1960), 171 Ohio St. 247, 12 O.O.2d 375, 168 N.E.2d 880; *State v. Gilkerson* (1965), 1 Ohio St.2d 103, 30 O.O.2d 385, 205 N.E.2d 13; and *Baxter v. Baxter* (1971), 27 Ohio St.2d 168, 56 O.O.2d 104, 271 N.E.2d 873.

{¶ 28} However, our findings today are at odds with the conclusions reached in *Brittain v. Indus. Comm.* (1917), 95 Ohio St. 391, 115 N.E. 110, wherein

the court construed portions of former Section 6, Article IV of the Ohio Constitution, which were similar to the current version of Section 3(B)(3), Article IV.[4] The court of appeals in *Brittain*, in a split decision, had reversed the judgment of the trial court, finding that the jury verdict was not sustained by *sufficient evidence*. On further appeal to this court, the court relied on former Section 6, Article IV of the Ohio Constitution and reversed the judgment of the court of appeals. We held that "[a] court of appeals is without authority to reverse a judgment of an inferior court on the ground that such judgment is not sustained by *sufficient evidence*, *unless the judgment of reversal is concurred in by all the judges of the court*." (Emphasis added.) *Id*. at syllabus.

{¶ 29} Specifically, in *Brittain*, we said:

"In view of the fact that the two phrases 'against the weight of the evidence' and 'not sufficient evidence' have so long been given the same meaning in our procedure, the framers of the amendment to [former] Section 6, Article IV of the Constitution, will be presumed to have had that fact in mind and to have intended that a court of appeals should not have the authority to reverse a judgment of an inferior court on the ground that it is 'against the weight of the evidence,' or that it is not sustained by 'sufficient evidence,' unless the judgment of reversal is concurred in by all the judges of the court." *Id*. 95 Ohio St. at 398, 115 N.E. at 112.

{¶ 30} However, we now believe that the court's holding in *Brittain* was in error. As we have repeatedly emphasized in our opinion today, weight of the evidence and sufficiency of the evidence are clearly different legal concepts. Further, by its clear and unambiguous terms, former Section 6, Article IV, required

---

4. Most of the provisions of Section 3, Article IV, were originally contained in former Section 6, Article IV, and have been transferred to Section 3, Article IV, by the Modern Courts Amendment in 1968. Former Section 6, Article IV, in effect from January 1, 1913 to January 1, 1945, and at the time of the court's decision in *Brittain v. Indus. Comm*. (1917), 95 Ohio St. 391, 115 N.E. 110, provided: "No judgment of a court of common pleas, a superior court or other court of record shall be reversed except by concurrence of all the judges of the court of appeals on the weight of the evidence, and by a majority of such court of appeals upon other questions * * *."

a unanimous concurrence of all three judges on the panel of a court of appeals *only* when the reversal of a judgment of a trial court was based on the *weight of the evidence*—not sufficiency of the evidence. In point of fact, former Section 6, Article IV (like the current provision in Section 3(B)(3), Article IV) did not prevent a concurring majority of a panel of judges of a court of appeals from reversing a judgment of a trial court on the ground that the judgment was not sustained by sufficient evidence.

{¶ 31} Accordingly, we overrule *Brittain* and hold that to reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary. We further hold that to reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required.

{¶ 32} Clearly, Section 3(B)(3), Article IV is a limitation on the power of a court of appeals. It is obvious that one of the underlying purposes of Section 3(B)(3), Article IV is to preserve the jury's role with respect to issues surrounding the credibility of witnesses.

III

{¶ 33} In conclusion, we find that the evidence presented by the state was sufficient as a matter of law to support the jury's verdict on the firearm specification. Based on *Murphy*, *Jenks*, and *Dixon*, *supra*, and R.C. 2923.11(B)(1) and (2), the state met its burden of proof.

{¶ 34} Accordingly, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court on the firearm specification conviction and sentence. We make no ruling with respect to any of the other determinations of the court of appeals including, specifically, the determination that the aggravated robbery and grand theft charges were allied offenses of similar import.

*Judgment reversed in part*
*and cause remanded.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

COOK and LUNDBERG STRATTON, JJ., concur separately.

—————————————

**COOK, J., concurring.**

{¶ 35} I concur in the well-reasoned opinion of the majority, but add one point of clarification. Today's case signals our appellate courts that it is improper to apply the same standard of review for questions involving the weight and sufficiency of evidence in reliance on *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503.

{¶ 36} A challenge to the sufficiency of evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Accordingly, application of the test set forth in the second paragraph of the syllabus in *Jenks, supra,* is proper.

{¶ 37} In contrast, in deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion. A court reviewing questions of weight is not required to view the evidence in a light most favorable to the prosecution, but may consider and weigh all of the evidence produced at trial. The only special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 277 N.E.2d 212, paragraph one of the syllabus. Accordingly, the standard set forth in *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215,

219, 485 N.E.2d 717, 720-721, and approved by the majority in this case, is suitable for the manifest-weight inquiry.

{¶ 38} The distinct inquiries that an appellate court undertakes in determining whether a conviction is supported by sufficient evidence and whether a conviction is against the manifest weight of evidence require different standards of review. Today's opinion acknowledges this and elucidates the appropriate standard for each inquiry.

LUNDBERG STRATTON, J., concurs in the foregoing concurring opinion.

——————————