[Cite as *State v. Miller*, 2010-Ohio-6390.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    10 MA 14 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| KENNETH MILLER, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from Common Pleas Court, Case No. 07CR687.

JUDGMENT: Affirmed.

APPEARANCES:
For Plaintiff-Appellee: Attorney Paul Gains
Prosecuting Attorney
Attorney Ralph Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio  44503

For Defendant-Appellant: Attorney Conrad Olson
P.O. Box 1437
Youngstown, Ohio  44501

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: December 22, 2010


VUKOVICH, P.J.


¶{1} Defendant-appellant Kenneth Miller appeals from his conviction in the Mahoning County Common Pleas Court of Robbery and Felonious Assault. Miller argues that both convictions are against the manifest weight of the evidence. As to the robbery conviction, he contends that the state did not prove beyond a reasonable doubt that: 1) he committed a theft offense; and 2) that he inflicted or attempted to inflict physical harm on another. As to the felonious assault conviction, he asserts that the state failed to prove beyond a reasonable doubt that Miller used a deadly weapon or dangerous ordnance in the commission of that offense.

¶{2} Considering the evidence produced at trial, we find that while each witnesses' version of events was plausible, the jury was in the best position to determine which one to believe, and we will not second-guess its determination. Accordingly, since we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice, the judgment of the trial court is hereby affirmed.

### STATEMENT OF CASE

¶{3} In June 2007, Miller was indicted on one count of Robbery, a violation of R.C. 2911.02(A)(2)(B), a second-degree felony; one count of Felonious Assault, a violation of R.C. 2903.11(A)(2)(D), a second-degree felony; and one count of Domestic Violence, a violation of R.C. 2919.25(A)(D), a first-degree misdemeanor. After delays in the pretrial proceedings, the trial court dismissed the indictment. That ruling was appealed to our court; we reversed the trial court's decision. *State v. Miller*, 7th Dist. No. 07MA215, 2008-Ohio-3085. Accordingly, the indictment was reinstated.

¶{4} The case then proceeded to trial and the jury returned guilty verdicts on all three counts of the indictment. 01/08/10 J.E. Miller was sentenced to an aggregate sentence of six years; he received six years for the robbery conviction, six years on the felonious assault conviction, and six months on the domestic violence conviction to be served concurrent to each other. 01/14/10 J.E.

¶{5} Miller timely appeals from the robbery and felonious assault convictions. His appeal does not challenge the domestic violence conviction; he admits that he committed that offense and that the elements of that offense were proven beyond a reasonable doubt.

## STANDARD OF REVIEW

¶{6} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387. The appellate court reviews the entire record, weighs the evidence and all reasonable inferences and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'*" Id. (Emphasis in original). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution. Id. at 390 (Cook, J., concurring). The reversal of a conviction based upon manifest weight grounds should only occur in the "exceptional case in which the evidence weighs heavily against the conviction." Id. at 387, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175. With that standard in mind, we now turn to the issues raised.

## FIRST ASSIGNMENT OF ERROR

¶{7} "THE TRIAL COURT DENIED APPELLANT HIS DUE PROCESS RIGHTS AS THE CONVICTION FOR ROBBERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

¶{8} To be found guilty of robbery, in violation of R.C. 2911.01(A)(2), the state must prove beyond a reasonable doubt that in attempting or committing a theft offense, the offender inflicted, attempted to inflict or threatened to inflict physical harm on another.

¶{9} As to the first element, attempting or committing a theft offense, theft is defined in R.C. 2913.02(A) as "No person, with purpose to deprive the owner of property * * * shall knowingly obtain or exert control over * * * the property * * * in any

of the following ways: 1) Without the consent of the owner * * *; 4) By threat; 5) By intimidation."

¶{10} Here, the victim testified as to the events that transpired between herself and Miller. She explained that she had previously been in a relationship with Miller and during that relationship Miller had borrowed money from her. (Tr. 263, 268). On April 23, 2007, about three weeks after their relationship ended Miller repaid her $160. (Tr. 264, 268-269). She avowed that when Miller gave her the money he stated that he was paying her back the money he owed her. (Tr. 268). Later that night, while she was in the parking lot of the apartment she was staying at, he showed up and demanded the money back. (Tr. 270). She told him she was not going to give the money back because that was money he owed her. (Tr. 271). As she was walking away from him he grabbed her backpack purse and yanked on it causing her to fall to the ground. (Tr. 271-274). While dragging her across the sidewalk towards the apartment, he punched, kicked and bit the victim. (Tr. 274). By the time they arrived at the apartment door, she was having an asthma attack. (Tr. 277). Miller opened the door to the apartment for her; she tried to keep him from coming in, but could not stop him. (Tr. 278, 279). She and Miller eventually ended up in the back bedroom of the apartment, where she attempted to call the police, but he stopped her. (Tr. 280, 284). She claimed he got a butcher knife from the kitchen, pinned her on the bed, was pointing the knife at her and telling her to give him his money. (Tr. 282, 285-286). They both had a struggle over the knife but she was able to take it from him. (Tr. 286-287). She started swinging it at him and told him to leave, which he did. (Tr. 287).

¶{11} This testimony confirms that Miller was attempting to take the victim's backpack purse and money. He did this without her consent and by threatening and intimidating her with physical force and a knife. Thus, that testimony established the theft offense.

¶{12} That said, it is acknowledged that Miller's testimony differed in some respects from that of the victim. He stated that although he was no longer living with the victim, on the date of the incident they were still a couple and were engaged. He testified that during their relationship they borrowed money from each other, but it was not a situation where they had to repay each other. (Tr. 415-416). Miller admitted to

giving the victim $160 on April 23, 2007 and demanding it back. However, he explained that the $160 was never her money. He clarified that the money was his and that he gave it to her for a deposit on an apartment they were getting together. (Tr. 416). Later, after giving her the money, he went to the apartment she was staying at to see her and he found her with a male friend. (Tr. 418). They all went to the store where she spent some of the money he had given her on beer and cigarettes. (Tr. 420). He stated that the money was not intended for that purpose and for that reason he wanted the money back. (Tr. 420). He admits in his testimony to trying to take the backpack purse to get his money out of it, to dragging her on the ground, and to biting her. (Tr. 439-440, 443). He also admits to getting a steak knife from the kitchen. (Tr. 427, 453). He contends he was going to use it to cut the backpack purse off of her, but before he attempted to do that he decided against taking that action. (Tr. 427). He denies using the knife in any manner, including waving it at her. (Tr. 428).

¶{13} His testimony, when considered in conjunction with hers, at most provides a conflict as to whether the money was his or the victim's. This creates a credibility issue. When determining whether a conviction is against the manifest weight of the evidence we are permitted to independently weigh the credibility of the witnesses. That said, when there are two fairly reasonable views of the evidence, neither of which is unbelievable, it is not our province to choose which one should be believed. *State v. Gore* (1999), 131 Ohio App.3d 197, 201. The jury is in the best position to determine credibility because it can view the witnesses' demeanor, gestures and voice inflections and, as such, it is in the best position to determine which version is more believable. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80. Because of the advantage a jury has in viewing the witnesses, courts are very cautious not to second-guess the jury's determination. *State v. Gilliam*, 7th Dist. No. 03MA176, 2005-Ohio-2791, ¶52 citing *State v. Wright,* 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶11. Consequently, in this instance, we cannot find that the jury clearly lost its way. The victim's assertion that the money was hers because Miller was repaying her is just as believable as Miller's assertion that the money was his.

**¶{14}** The next element of robbery is that the offender attempted to inflict or inflicted physical harm. Physical harm is defined in R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." The testimony of the victim and Miller both confirm that Miller inflicted physical harm on the victim. Not only did he admit to biting her, but pictures were introduced at trial of the scratches and bruises she sustained while being dragged across the ground by Miller.[1] Moreover, when specifically asked at trial if he thought he caused the victim physical harm, he responded, "absolutely." (Tr. 446).

**¶{15}** Consequently, this assignment of error lacks merit. The elements of robbery were proven beyond a reasonable doubt; the conviction is not against the manifest weight of the evidence.

### SECOND ASSIGNMENT OF ERROR

**¶{16}** "THE TRIAL COURT DENIED APPELLANT HIS DUE PROCESS RIGHTS AS THE CONVICTION FOR FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**¶{17}** In order to prove that Miller committed felonious assault, the state had to prove beyond a reasonable doubt that Miller caused or attempted to cause physical harm to the victim with a deadly weapon or dangerous ordnance. R.C. 2903.11(A)(2). The focus of this assignment of error is whether Miller used a deadly weapon in the commission of the offense.

**¶{18}** For purposes of felonious assault, "deadly weapon" has the same meaning as set forth in R.C. 2923.11. That statute defines a "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A); R.C. 2903.11(E)(1).

**¶{19}** The allegation is that Miller used a knife in the commission of the offense. Appellate courts have stated that a knife is not presumed to be a deadly weapon. *State v. Hill*, 10th Dist. No. 09AP-398, 2010-Ohio-1687, ¶30; *State v. Densmore*, 3d Dist. No. 7-08-04, 2009-Ohio-6870, ¶41; *State v. Pringle*, 12th Dist.

---

[1]The victim did get cut by the knife. However, she testified that Miller did not cut her with the knife, rather, she cut herself with the knife. (Tr. 331).

Nos. CA2007-08-193 and CA2007-09-238, 2008-Ohio-5421, ¶43; *State v. Berry*, 2d Dist. No. 21037, 2006-Ohio-833, ¶9; *State v. Deluzia*, 9th Dist. No. 22528, 2005-Ohio-4660, ¶22-23; *State v. Johnson*, 8th Dist. No. 81299, 2003-Ohio-4177, ¶22-23; *State v. Anderson* (1981), 2 Ohio App.3d 71, 72. Instead, the state is required to prove that the knife used meets the statutory definition of a deadly weapon. *Densmore*, supra, at ¶41; *Berry*, supra, at ¶9-12; *Johnson*, supra, at ¶22-23; *Anderson*, supra, at 72. In other words that: 1) it was capable of inflicting death, and 2) it was designed or specially adapted for use as a weapon or, was used as a weapon.

**¶{20}** The knife was described by the victim as a butcher knife and by Miller as a steak knife. Regardless of which witness was believed, the jury could reasonably conclude that either a steak or butcher knife was capable of inflicting death. See *Berry*, supra, at 11; *Johnson*, supra, at ¶23.

**¶{21}** As to the element of whether Miller used the knife as a weapon, the victim's testimony, as referenced above, indicated that Miller came at her with the knife. (Tr. 282). Additionally, she demonstrated to the jury how Miller was holding the knife when he came at her. (Tr. 283-284). She testified that he pinned her to the bed; he was holding her with one arm and pointing the knife in her face with the other. (Tr. 285-286). She also demonstrated how he was pointing the knife at her and how far it was from her face. (Tr. 285-286).

**¶{22}** Miller, on the other hand, testified that while he got the knife from the kitchen and brought it to the bedroom, he just laid it on the bed. (Tr. 428). He claims that after the victim took her medicine for the asthma attack, she picked up the knife and was swinging it at him. (Tr. 428).

**¶{23}** As with the evidence for robbery, there are two versions of what transpired between Miller and the victim. Both versions are plausible and believable. The jury obviously believed the victim. Her testimony clearly established the elements of felonious assault; the knife could inflict death, and by coming at her with it, Miller used the weapon in attempting to inflict physical harm. As explained above, the jury was in the best position to determine which version to believe. This is especially the case where the record indicates that the victim demonstrated to the jury how the knife was used against her, but did not verbalize that demonstration. Therefore, this court is

unable to review the demonstration and must presume the regularity of the proceedings. See *State v. Lowe*, 7th Dist. No. 08CO37, 2010-Ohio-2788, ¶28. Hence, this court should not second-guess the jury's determination.

¶{24} Lastly, under this assignment of error Miller asserts an argument concerning the fact that the state did not call Cortez to testify at trial so that he could corroborate the victim's testimony. Both Miller and the victim testified that Cortez was present for the altercation with the knife and that Cortez got cut. (Tr. 286, 429). Despite Miller's assertions, the state did not need Cortez's testimony to establish the elements of felonious assault. As provided above, the victim's testimony sufficiently did that. Thus, the only effect Cortez's testimony would have had would be to lend credibility to either Miller or the victim's version of events. While one might question why Cortez was not called as a witness to corroborate the victim's version of the events, that same question could be posed to Miller. Why didn't he call Cortez to corroborate his version of events? Thus, Miller's argument concerning Cortez does not provide support for the position that the conviction was against the manifest weight of the evidence. The felonious assault conviction was not against the manifest weight of the evidence and this assignment of error lacks merit.

### CONCLUSION

¶{25} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
Waite, J., concurs.