[Cite as *State v. Rose*, 2025-Ohio-204.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

SOL ROSE III,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 JE 0013**

---

Criminal Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 24 CR 61

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jane M. Hanlin*, Jefferson County Prosecutor, and *Atty. Frank J. Bruzzese,* Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Adam M. Martello*, for Defendant-Appellant.

Dated: January 21, 2025

**HANNI, J.**

{¶1}   Defendant-Appellant, Sol Rose III, appeals from a Jefferson County Common Pleas Court judgment convicting him of felonious assault, following a bench trial.  Appellant contends his conviction was against the manifest weight of the evidence and that his counsel was ineffective for failing to move to separate the witnesses prior to trial.  Because Appellant's conviction was not against the manifest weight of the evidence and his trial counsel was not ineffective, the trial court's judgment is affirmed.

{¶2}   On March 21, 2024, Appellant was at Terry Toson's house with several others.  The house is known to police as being a "crack house" or a "crash house."  Brian Digman was in an upstairs bedroom with Cara Crabtree and Jimmy Branham.  Lamontea Whatley entered the room and was speaking loudly when Digman told her to shut up.  Appellant then came into the bedroom.  Appellant bumped or pushed Branham.  Branham called Appellant a "fucking asshole."  Appellant then hit and stabbed Branham in the back with what Branham described as a "sharp object."  Branham turned and put his hands up to block Appellant from stabbing him in the neck and Appellant stabbed him in the hand twice.  Branham pushed away from Appellant and left the house.  He was taken to the hospital and treated for his injuries.

{¶3}   Officer Brandon Kelly responded to the scene.  After talking to those still present at the house, the officer went to Appellant's apartment.  When Appellant opened the door, Officer Kelly asked him if he had any weapons.  Appellant responded, "just the thing I had" and indicated to his waistband.  Officer Kelly then removed a tire reamer from Appellant's waistband.  Officer Kelly described the tire reamer as a "T" shaped object with a spike on the end, so that one would grip it in their fist.  He stated the grip handle had duct tape on it and Appellant referred to it as a "shiv."

{¶4}   Branham described the person who attacked him as an older black man with a short white beard wearing a grey shirt.  Appellant fit this description.  And all of the others present at the scene later identified Appellant.

{¶5}   On May 1, 2024, a Jefferson County Grand Jury indicted Appellant on one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2).

Appellant entered a not guilty plea and the matter proceeded to a bench trial.  The trial court found Appellant guilty as charged.

{¶6}  The trial court subsequently sentenced Appellant to a minimum prison term of six years and a maximum term of nine years.  Additionally, because Appellant had been on postrelease control from a prior case and had now violated his postrelease control terms, the court sentenced him to an additional year.

{¶7}  Appellant filed a timely notice of appeal on August 6, 2024.  He now raises two assignments of error for our review.

{¶8}  Appellant's first assignment of error states:

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶9}  Appellant claims his conviction was against the manifest weight of the evidence.  He first argues that the evidence did not prove that he stabbed Branham with the tire reamer.  He states that while witnesses testified that they saw him "swing at" or "hit" Branham, no one testified that they actually saw him stab Branham.  Appellant also points out that while Branham's DNA was found on the tire reamer, there were too many DNA profiles on the handle of the tire reamer to positively identify Appellant's DNA as being present.  And he claims that the tire reamer was located outside of Toson's house.

{¶10}  Appellant further argues that none of the witnesses were credible.  He points out that every witness was present in a known "crack house" where cocaine was present at the time of the incident.  Appellant asserts Digman lied on the stand and had a motive to punish Appellant because Appellant allegedly beat him with a lead pipe prior to the incident.  He claims Branham is a known drug user with mental health issues, who was not taking his medication, and could not identify what instrument he was stabbed with.  Appellant says Crabtree is a known drug user, put forth inconsistent stories, and admitted to lying to the police.

{¶11}  Finally, Appellant argues that the State did not prove that the tire reamer was a "deadly weapon."  He asserts there was no evidence that the tire reamer was designed or adapted for use as a deadly weapon.  And he again points to witness testimony that no one actually saw him use the tire reamer as a deadly weapon.

Case No. 24 JE 0013

{¶12} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380 (1997). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id.* at 387, quoting *Black's Law Dictionary* (6 Ed.1990) 1594; (Emphasis sic). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id.*

{¶13} Only when "it is patently apparent that the factfinder lost its way," should an appellate court overturn the jury verdict. *State v. Woullard*, 2004-Ohio-3395, ¶ 81 (2d Dist.). If a conviction is against the manifest weight of the evidence, a new trial is to be ordered. *Thompkins* at 387. "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." *State v. Miller*, 2002-Ohio-4931, ¶ 36 quoting Ohio Const., art. IV, § 3(B)(3).

{¶14} Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides: "No person shall knowingly . . . [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A).

{¶15} We must examine the evidence put forth at trial to determine if Appellant's conviction is against the manifest weight of the evidence.

{¶16} Steubenville Police Officer Brandon Kelly was the first witness. Officer Kelly responded to a 911 call that a man had been stabbed. (Tr. 19). He noticed Branham on the steps of 421 North 7th Street. (Tr. 19). The officer could see blood coming through Branham's shirt on his right shoulder and an injury to his right hand. (Tr. 19). Branham told Officer Kelly that he had been stabbed by an older black man with a white beard. (Tr. 19). Branham pointed to the house next door, 423 North 7th Street, which Officer Kelly

was familiar with as being a "crash" or "crack" house. (Tr. 19-20). Officer Kelly and another officer knocked on the door and Crabtree answered. (Tr. 20).

{¶17} After speaking with Crabtree, Officer Kelly went to Appellant's apartment. (Tr. 24). Appellant, an older black man with a white beard, answered the door. (Tr. 24). The officer asked Appellant if he had any weapons, and Appellant responded, "just the thing I had." (Tr. 25). He asked Appellant where it was and Appellant indicated toward his waistband. (Tr. 25). Officer Kelly then removed a tire reamer from Appellant's waistband. (Tr. 25). He described the tire reamer as a spike with a "T" handle. (Tr. 25). The handle had been wrapped with foam cushioning and duct tape and Appellant referred to it as a "shiv." (Tr. 25).

{¶18} Officer Kelly asked Appellant what happened at 423 North 7th Street. (Tr. 25). Appellant described Digman making an insulting comment to Whatley. (Tr. 25). Appellant denied any physical altercation. (Tr. 25). Officer Kelly also spoke with Whatley, who denied any physical altercation at that time. (Tr. 26). Officer Kelly next went back to 423 North 7th Street to look for Digman, who had a warrant out for his arrest. (Tr. 34).

{¶19} Officer Kelly arrested Digman on the warrant and then asked him about the issue at hand. (Tr. 36). After interviewing Digman, Officer Kelly went to the hospital to speak to Branham. (Tr. 36). At the hospital, the officer was able to observe Branham's injuries. He saw that the injury to Branham's shoulder had a very distinct circular mark that looked to have been caused by the tire reamer. (Tr. 17; Ex 2). The injuries to Branham's hands appeared to the officer to be defensive wounds. (Tr. 37; Exs. 3, 4). Officer Kelly also noted that at this time, Branham added to his description of his attacker to include the fact that he was wearing a grey thermal shirt. (Tr. 44). When Officer Kelly had spoken to Appellant earlier, Appellant had been wearing a grey thermal shirt. (Tr. 44-45).

{¶20} Officer Kelly testified that he then went back to Appellant's apartment to arrest him. (Tr. 46). When Appellant saw Officer Kelly, he immediately stated, "I'm sorry." (Tr. 46).

{¶21} Officer Kelly stated that the tire reamer was sent to the Ohio Bureau of Criminal Identification and Investigation (BCI) for DNA analysis. (Tr. 30). He stated that the spike end of the tire reamer tested positive for Branham's DNA. (Tr. 31; Ex. 8). He

stated that the handle end was also tested but it was concluded that the DNA was not of sufficient quality due to the number of contributors. (Tr. 77; Ex. 8).

**{¶22}** Digman testified next. Digman stated that on the day in question he was at Toson's house in an upstairs bedroom talking on the phone. (Tr. 82-83). Branham was also in the room along with Crabtree and Whatley. (Tr. 83, 85). He became frustrated with Whatley for being loud and told her to "shut the fuck up." (Tr. 83). Branham came at him, backed him into a corner, and kicked him. (Tr. 83). Branham then bent over to pick up his cigarettes and lighter that he dropped and in doing so, he bumped into Appellant and called Appellant a "fucking asshole." (Tr. 83-84). According to Digman, Branham then turned to leave the room when Appellant "swung" on Branham. (Tr. 84). Digman stated Appellant and Branham "scuffled around the room for a little bit" and then Branham left. (Tr. 84). Digman saw what he thought was an ice pick in Appellant's hand but did not realize Branham had been stabbed until afterwards. (Tr. 84, 87-88). Digman testified he had seen Appellant with the tire reamer many times prior to this incident. (Tr. 91).

**{¶23}** Branham was the next witness. He testified that on the day in question he was upstairs in Toson's house with Digman, Crabtree, and Whatley. (Tr. 109). Branham stated that Whatley was being loud while Digman was on the phone and he yelled at her to "shut up." (Tr. 110). He said that Appellant then entered the room and pushed into the back of him when he bent over to pick up his cigarettes and lighter. (Tr. 110). Branham called Appellant an "effing A-hole." (Tr. 110). He testified that Appellant then stabbed him in the back near his shoulder. (Tr. 112). Branham stated that Appellant swung at him and Branham put up his hands to protect his neck. (Tr. 113-114). He could tell Appellant had a sharp object that stabbed him twice in his hand. (Tr. 114).

**{¶24}** Branham testified that he was able to push away from Appellant and leave the house. (Tr. 115). He went next door and the police were called. (Tr. 115-116). Branham stated that he was taken by ambulance to the hospital where he was treated for his wounds. (Tr. 116). Later, when speaking to police, Branham gave a description of Appellant. However, he did not identify him by name despite knowing his first name. (Tr. 117-118). Branham also stated that he is bipolar and schizophrenic. (Tr. 137). Branham

testified that he was not taking his medications for these conditions on the day in question. (Tr. 138).

{¶25} Crabtree also testified. She stated that on the day in question she was in an upstairs bedroom at Toson's house with Digman, Whatley, and Branham. (Tr. 146). Digman yelled at Whatley to "shut the fuck up." (Tr. 146-147). Appellant then came into the room and told Digman he was "tired of this shit" and took a swing at Digman. (Tr. 147). Branham then bent over to pick up his cigarettes and lighter, bumped into Appellant, and called him an "asshole." (Tr. 148). Appellant hit Branham in the back and then in the hand. (Tr. 148). She did not see a weapon in Appellant's hand and did not know Branham had been stabbed. (Tr. 148-149, 155). Crabtree admitted that when the police first showed up she lied to them, telling them Digman was not there. (Tr. 159). This was because Digman had a warrant out for his arrest on an unrelated matter. (Tr. 158-159). She also admitted writing in her statement to police that Appellant stabbed Branham, despite her not actually witnessing the stabbing. (Tr. 162-164).

{¶26} Lindsay Deetz is the forensic scientist at BCI who tested the tire reamer for DNA. She testified that the metal end had DNA that was consistent with Branham's DNA at the odds of one in one trillion. (Tr. 188). Deetz testified that the DNA profile on the handle end of the tire reamer was not of sufficient quality for comparison due to the number of contributors. (Tr. 188).

{¶27} Based on this evidence, Appellant's conviction is not against the manifest weight of the evidence.

{¶28} While there were some discrepancies regarding small details among the eye witnesses, several main things were consistent. Each of the witnesses in the room stated: Digman yelled at Whatley; Appellant entered the room; Branham and Appellant bumped into each other; Branham called Appellant a name; and Appellant "swung" at or struck Branham in the back. Thus, the recitation of the events was consistent among the witnesses as to the fact that Appellant assaulted Branham.

{¶29} Moreover, even though none of the witnesses were able to testify that they saw Appellant stab Branham with the tire reamer, the evidence demonstrated such was the case. When Officer Kelly went to Appellant's apartment and asked if he had any weapons on him, Appellant responded, "just the thing I had" and indicated his waistband.

Officer Kelly removed the tire reamer from Appellant's waistband. DNA testing revealed that Branham's DNA was present on the spike end of the tire reamer. And Branham's shoulder injury was consistent with being punctured by the tire reamer. Thus, even though no one was able to conclusively testify that they saw Appellant stab Branham with the tire reamer, the circumstantial evidence demonstrated this fact. Circumstantial evidence and direct evidence have the same probative value. *State v. Dodds*, 2007-Ohio-3403, ¶ 88 (7th Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991).

**{¶30}** As to the witnesses' credibility, it is true that they had some credibility issues. As Appellant points out, this incident occurred at a known "crack" house. Digman had a warrant out for his arrest, Branham admitted to suffering from schizophrenia and bipolar disorder and not taking his medications, and Crabtree admitted to lying to police.

**{¶31}** But while there may be truth to Appellant's allegations, it was up to the court, as the trier of fact, to decide how much weight to give to each witnesses' testimony. The trier of fact is in the best position to determine the credibility of the witnesses and the weight to be given to the evidence. *Thompkins*, 78 Ohio St.3d at 387. The trial court here was able to listen to each witness, consider their shortcomings, and consider what weight to give their testimony. We will not second-guess these credibility determinations.

**{¶32}** Finally, Appellant argues that the tire reamer was not a "deadly weapon." To prove the tire reamer was a "deadly weapon," the State had to prove: "1) it was capable of inflicting death, and 2) it was designed or specially adapted for use as a weapon or, was used as a weapon." *State v. Miller*, 2010-Ohio-6390, ¶ 19 (7th Dist.). The trier of fact could conclude that the tire reamer was capable of inflicting death. The photograph of the tire reamer shows that it is approximately as long as the officer's hand that is holding it. (State Ex. 9). At least half of that length is a long, pointed, screwdriver-like, metal spike. (State Ex. 9). Moreover, the evidence demonstrated that Appellant used the tire reamer as a weapon when he struck Branham in the back and in the hand with it causing injuries to Branham. Thus, the State proved the tire reamer was a "deadly weapon" in this case.

**{¶33}** Given the above, Appellant's conviction was not against the manifest weight of the evidence.

**{¶34}** Accordingly, Appellant's first assignment of error is without merit and is overruled.

**{¶35}** Appellant's second assignment of error states:

IT WAS INEFFECTIVE ASSISTANCE OF COUNSEL TO FAIL TO MOVE TO SEQUESTER WITNESSES AND CALL FOR AN EVIDENTIARY HEARING REGARDING THEIR IN-TRIAL CONTACT AND IT WAS REVERSIBLE ERROR FOR THE COURT TO FAIL TO INQUIRE INTO THE CONTACT HAD BETWEEN WITNESSES DURING TRIAL.

**{¶36}** After Digman testified, the court took a five-minute recess. (Tr. 105). When the matter resumed, defense counsel brought an issue to the court's attention:

MR. NORMAN: Your Honor, while he is being called, we had a quick issue.

After Mr. Digman was excused, he went back into the jury room where the other witnesses are, and I observed him speaking very intently and heatedly with who I believe to be Ms. Cara Crabtree, who will be a witness here. It's my belief that he was instructing her on testimony and/or instructing her on what he said on the stand. Obviously, that's very improper, and from this time moving forward, I will request all witnesses be sequestered and kept separate.

(Tr. 106). Both counsel and the court then made sure that the remaining witnesses were separated.

**{¶37}** Appellant contends here that his trial counsel was ineffective for failing to move to separate the witnesses at the beginning of trial. He asserts that after Digman testified he went back to the jury room where the other witnesses were and spoke to Crabtree, possibly telling her what he had just testified to. After this, defense counsel asked the court to keep the witnesses separate. (Tr. 106). Appellant asserts that had defense counsel moved for a separation of witnesses at the beginning of trial, the court would have granted it since Evid.R. 615 is mandatory on this.

**{¶38}** Appellant further contends his counsel was ineffective for failing to request

that the court hold an evidentiary hearing to determine the substance of the communication between the witnesses. And he asserted the trial court abused its discretion in failing to sua sponte hold an evidentiary hearing to determine what was discussed among the witnesses.

**{¶39}** To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id.* To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

**{¶40}** Appellant bears the burden of proof on the issue of counsel's ineffectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶41}** Appellant cannot demonstrate prejudice here.

**{¶42}** Evid.R. 615(A) provides that at a party's request,

> the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. *An order directing the "exclusion" or "separation" of witnesses* or the like, in general terms without specification of other or additional limitations, *is effective only to require the exclusion of witnesses from the hearing during the testimony of other witnesses*.

(Emphasis added).

**{¶43}** According to Evid.R. 615(A), had defense counsel moved for the separation or exclusion of witnesses at the beginning of the trial, the court would have been obligated to grant the motion. But the granting of this motion would have only kept the witnesses from being in the courtroom and listening to each other's testimony. There is no allegation here that any witness was in the courtroom while another witness was testifying. Instead, the allegation is that Digman spoke to Crabtree outside of the courtroom after he testified

and may have discussed his testimony with her. Thus, even if defense counsel had moved for the separation of witnesses earlier on, the result here would be no different.

{¶44} Further, as discussed in detail in Appellant's first assignment of error, the evidence overwhelmingly supports Appellant's conviction. Even if we did not consider Crabtree's testimony, there would still be ample evidence on the record to support Appellant's conviction. The evidence would still demonstrate that: Appellant "swung" or hit Branham; Branham suffered stab wounds; a tire reamer located in Appellant's waistband just after the incident had Branham's DNA on the spike end; Appellant matched the description Branham gave of his attacker; and Branham identified Appellant in court. Thus, even if the court was never presented with Crabtree's testimony, the result here would be the same. And because Appellant cannot demonstrate prejudice, his argument must fail.

{¶45} Accordingly, Appellant's second assignment of error is without merit and is overruled.

{¶46} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

Dickey, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**