[Cite as *State v. Jones*, 2017-Ohio-385.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104349**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# JIHARD JONES

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART
AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-599537-A

**BEFORE:** Keough, A.J., Celebrezze, J., and Jones, J.

**RELEASED AND JOURNALIZED:** February 2, 2017

**ATTORNEY FOR APPELLANT**

Christopher M. Kelley
75 Public Square, Suite 700
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Mary M. Dyczek
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, A.J.:

{¶1} Defendant-appellant, Jihard Jones ("Jones"), appeals his convictions. For the reasons that follow, we affirm Jones's convictions, but vacate his sentence and remand for resentencing.

{¶2} In October 2015, Jones was named in a seven-count indictment charging him with two counts of aggravated robbery, two counts of having weapons under disability, and one count each of felonious assault, kidnapping, discharge of a firearm on or near prohibited premises, and improper handling of a firearm. The counts contained various specifications, including one-, three-, five-, and six-year firearm specifications, repeat violent offender specifications, and forfeiture specifications. The indictment also requested forfeiture of the weapon. Jones waived his right to a jury trial, and the case proceeded before the bench where the following evidence was presented.

{¶3} On July 19, 2015, after a night of drinking with his girlfriend, Jones drove his girlfriend's car to the corner of West 45th Street and Detroit Avenue, where he encountered Tameka Braggs ("Braggs"), a known transgender prostitute. After confirming Braggs's identity as "Cinnamon," the two negotiated a price for Braggs to perform oral sex on Jones. Once the price of $20 or $25 was confirmed — a discount according to Braggs because she found Jones attractive — Braggs got into the passenger seat of Jones's car and they drove to a nearby alley.

{¶4} Upon receiving payment, Braggs began performing fellatio on Jones. According to Braggs, during the middle of the encounter, she confirmed with Jones that

because he knew her as "Cinnamon," he must know that she has male genitalia. Braggs testified that Jones stated that he "should punch her" for disclosing this detail during the act. Nevertheless, Jones allowed Braggs to complete the encounter. Afterward, Jones discarded the used condom and an antibacterial wipe out of the car window. Instead of taking Braggs back to her original location as she requested, Jones pulled a handgun from his left side, pointed it at Braggs, and demanded she return the money he had paid her. Braggs testified that she feared for her life and felt unable to leave the vehicle.

{¶5} However, being 5' 11" and about 245 pounds, Braggs tussled with Jones over the gun, ultimately gaining control and possession of the firearm. Braggs testified that the gun went off during the struggle. In a means to escape, she took Jones's cell phone and fled the vehicle. To distract Jones, who was chasing her, Braggs threw the cell phone on the ground. Jones retrieved the phone, but continued to chase Braggs yelling that the gun belonged to his girlfriend.

{¶6} Jones eventually caught up to Braggs, and they argued and struggled over the gun. According to Braggs, she was afraid that if she returned the gun, Jones would shoot her. During the chase and struggle, Braggs was able to call 911. During the call, Braggs told dispatch that someone had tried to rob her, but she was able to take the gun from the man. The recording was played in open court, and it can be heard that a male is arguing with Braggs about the firearm. Braggs then tells dispatch that the male assaulted her by "socking" her. Braggs repeatedly tells dispatch and the male that he tried to rob her, and Jones can be heard in the background yelling.

**{¶7}** While on the phone with the dispatcher, Braggs observed a sheriff's vehicle and was able to flag down the car. According to Braggs, Jones then fled on foot. Fearing that the police would misperceive the situation, she threw the gun in the grass nearby, but advised the officer of its presence.

**{¶8}** On cross-examination, Braggs admitted that she was unable to identify Jones from the photo array as the person who tried to rob her. She further admitted that despite being fearful, she taunted Jones while he was on the phone after the robbery stating that he should tell his girlfriend that he picked up a transgender woman.

**{¶9}** Toni Singleton, Jones's girlfriend, testified that in the early morning of July 19, 2015, Jones came to her residence and told her someone had taken her gun. She walked to Detroit Avenue where the police were investigating the robbery in an effort to retrieve her gun. She admitted that while on scene she did not disclose Jones's identity. Singleton testified that she had not told Jones her gun was in her purse, and unless he opened her purse, Jones would not have known the gun was there. Singleton stated that the location of her purse, as depicted in the exhibit, was where she left the purse that evening — on the backseat behind the passenger's seat.

**{¶10}** Detective John Graves testified that he responded to the scene to find Braggs upset and mad about the incident. He testified that he recovered the firearm from the grass, and when he unloaded the weapon, he discovered that it had a spent casing in the chamber that did not eject when it was fired. Graves testified that it was his experience that if the slide of the gun does not go all the way back or is covered up, the

casing will stay inside and not kick out even if the gun was fired. After speaking with Braggs, he searched for evidence in the alley. He located a condom with suspected semen inside and an antibacterial wipe on the ground in the alley. It was stipulated that the DNA on the used condom and antibacterial wipe matched both Braggs and Jones. Graves testified that Singleton arrived on scene crying and requested the return of her firearm. She told him that the male she was seeing told her that "he had done something stupid." (Tr. 154.)

{¶11} Detective Virgil Williams testified that he was assigned to investigate the incident involving Braggs and Jones. He stated that Singleton was called into the station and identified Jones as the suspect in the aggravated robbery. Additionally, Detective Williams confirmed that no DNA or fingerprint tests were performed on the firearm; it was tested only for operability.

{¶12} Following the state's case, the state dismissed the five-year firearm specification in Counts 1 through 5 and dismissed the six-year firearm specification in Count 5. Based on Jones's arguments in support of his Crim.R. 29 motion for judgment of acquittal, the trial court amended Count 3, felonious assault, to misdemeanor assault, a violation of R.C. 2903.13(A)(1).

{¶13} The court found Jones not guilty of discharge of a firearm as charged in Count 5. However, it found Jones guilty of both counts of aggravated robbery, assault, kidnapping, improper handling of a firearm in a motor vehicle, and both counts of having

a weapon while under disability. Additionally, the court found Jones guilty of the remaining specifications attendant to each count.

**{¶14}** The court imposed a three-year sentence on both counts of aggravated robbery and kidnapping, 180 days for the assault conviction, 24 months on each count of having weapons under disability, and 12 months for improper handling of a firearm in a motor vehicle. The court ordered the sentences to run concurrent for a total of three years. After merging all the firearm specifications into a single three-year firearm specification, the court ordered Jones to serve the specification prior to and consecutive to the three-year base sentence on the aggravated robbery charge in Count 1, for a total prison sentence of six years. Despite the trial court subsequently finding that the two counts of aggravated robbery merge, the court imposed a sentence on each count.

**{¶15}** Jones now appeals, raising three assignments of error, which will be addressed together where appropriate.

## I. Manifest Weight of the Evidence

**{¶16}** In his first assignment of error, Jones contends that his convictions for aggravated robbery, kidnapping, assault, improper handling of a firearm in a motor vehicle, and having weapons under disability are against the manifest weight of the evidence.

**{¶17}** In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "weighs the evidence and all

reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶18}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The court may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶19}** Jones contends that his convictions are against the manifest weight of the evidence because Braggs was inconsistent with the details surrounding the encounter; specifically, how much she was paid, whether the gun actually discharged during the struggle, and if she was assaulted. Furthermore, Jones contends Braggs was not credible

because she did not identify him from a photo array, and despite having an income, she does not file taxes and receives food stamps and Medicaid. These points were made during Jones's closing argument.

{¶20} In announcing the verdict, the trial court stated it considered all of these arguments, and addressed the inconsistencies in Braggs's testimony. The court ultimately concluded that despite Braggs's lifestyle and dishonesty in carrying out that lifestyle, it found Braggs credible regarding the events that occurred during the early morning of July 19, 2015.

{¶21} The record is clear that Braggs did not bring the firearm to the encounter. It is undisputed that the firearm involved belonged to Jones's girlfriend, who kept the gun in her purse. Singleton testified that she left her purse on the back seat behind the passenger seat. The court, in considering who could access the firearm in the backseat, concluded that based on Braggs's size, the compact-nature of the car, and the purse location, only Jones would be able to access the inside of the purse and retrieve the gun. Additionally, because the gun belonged to his girlfriend and he knew she carried a gun in her purse, the court found it reasonable to infer that Jones accessed the gun. Based on the evidence, these inferences are not unreasonable.

{¶22} Jones also claims Braggs was not credible because she testified that the police recovered a shell casing, but in fact no casing was found. This inconsistency is insufficient to reverse Jones's convictions. Moreover, Detective Graves discovered a spent casing jammed inside the gun; however, he could not state when the gun was fired.

Thus, the court noted that it was possible that the gun did in fact go off, but the evidence was insufficient to prove that Jones discharged the firearm.

{¶23} Additionally, based on the DNA and direct evidence, it is undisputed that a paid-for sexual encounter occurred between Braggs and Jones. Therefore, there is no issue about identity, and the fact that Braggs was unable to pick Jones out of a photo array prior to trial is irrelevant. Moreover, regardless of how much Jones paid Braggs, money was exchanged.

{¶24} Finally, Jones claims that Braggs's subsequent taunting demonstrates that she was not fearful and is inconsistent with that of someone who had just been robbed. However, it is reasonable to conclude that Braggs's fear turned to anger once she managed to gain control over the gun and have it in her possession.

{¶25} This is not the exceptional case where the evidence weighs heavily against Jones's convictions. Accordingly, the trial court did not lose its way in finding Jones guilty of these offenses. Jones's first assignment of error is overruled.

## II. Allied Offenses

{¶26} In his second assignment of error, Jones contends that the trial court erred in failing to merge his convictions of aggravated robbery in Counts 1 and 2, and kidnapping in Count 4. In his third assignment of error, Jones contends that the trial court erred in finding that the aggravated robbery offenses set forth in Counts 1 and 2 were allied offenses but then sentencing him on each separate offense. The state concedes these

errors, stating that Jones's "convictions for the two counts of aggravated robbery and the one count of kidnapping should have merged for the purposes of sentencing."

**{¶27}** Accordingly, Jones's second and third assignments of error are sustained. His sentence is vacated and the case is remanded to the trial court for resentencing for the court to merge Counts 1, 2, and 4 and allow the state to elect upon which count the court should impose sentence.

**{¶28}** Judgment affirmed in part, reversed in part, and remanded for resentencing.

It is ordered that the parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, SR., J., CONCUR